## RAYMOND *vs.* BIGELOW & a.

Where a bond was given on a dissolution of partnership, with the condition that one partner " should pay all debts and demands against the company contracted by him in the name of the company"—*Held*, that where the company debts had been previously adjusted, and a joint and several note given by the members of the firm for the same, they did not come within the condition of the bond.

Also, that where debts were jointly contracted by the members of the firm, they did not come within the condition of the bond.

DEBT, upon a bond dated August 26, 1839, in the penal sum of $1000, made by the defendants, Bigelow as principal, and Bennett as surety, and payable to the plaintiff on the condition following :

" That if the said Bigelow and Bennett, or either of them, shall pay or cause to be paid, all debts, dues and demands against the company of Raymond & Bigelow, contracted by the said Bigelow in the name of the company, and shall save and keep said Raymond harmless from all such demands against said company, then the obligation is to be void."

The plaintiff alleged that he had paid sundry notes, for which, by the terms of said bond, the defendants were bound

to indemnify him; and the question submitted is, whether the payments are such as, by the terms of the bond, should have been made by the defendant.

Jacob Wales testified, that in the early part of April, 1839, he was lessee of a certain tavern stand, and that he transferred his interest therein to the defendant and Bigelow, on their agreeing to give him $10 for his bargain. He also sold to them some articles, amounting to $9·83 more, for all which he took a note for $19·83, signed by Raymond & Bigelow jointly and severally, dated April 13, 1839. Bigelow made the bargain with him for the articles, and was the active man in transacting the business.

On the 1st of May, 1839, he lent Raymond & Bigelow $75, for which they gave him their joint and several note. Both of them were present when he agreed to lend them the money, which was a sum due from the father of Raymond, who knew that Wales was about receiving that sum from his father. The money was delivered to Bigelow, who said he wanted it to pay a debt which they owed, and to buy some grain and other articles for the tavern. Bigelow signed the note first, and in a day or two afterwards Raymond signed it. On the 22d day of June, 1839, Bigelow paid him $25, which was endorsed on the $75 note. He kept the notes until he heard that Raymond had conveyed his interest in the tavern, and then sued Raymond on the notes, who, in September, 1839, paid about $72 or $73 to discharge the debt and costs.

Benjamin Alger testified that in April, 1839, Raymond & Bigelow agreed with him for the purchase of a wagon; and on the 13th of April he sold them the wagon, and received their joint and several note for $25. The bargain was principally made by Bigelow, and the wagon was sold them just as they were going into partnership. He agreed to wait three or four months for the money; and after the time had expired, called on Raymond, who said a bond had been given him for his security, and that the witness must

go to Bigelow for his money. He went to Richmond, and called on Bigelow for the money, who told him he had not the money then, but would pay it in a week or two, and requested witness not to say anything to Bennett about it. Bigelow neglecting to pay the note, the witness sued Raymond upon it, who paid, to discharge debt and costs, the sum of $31·50.

It appeared that after the dissolution of the firm of Raymond & Bigelow, Bigelow had the wagon in his possession, and used it ; and there was some evidence tending to show that he had exchanged it with Bennett for another wagon.

On the 14th of November, 1839, the plaintiff presented to the defendants the notes aforesaid, and demanded of them the amount he had been compelled to pay. The defendants refused to pay, Bigelow saying that he was willing to pay one half, but afterwards saying that he had notes in his hands of the same description, which he had paid, and which he was willing to offset against these. Bennett said they were not company notes which he was under any obligation to pay, but were joint and several notes, and refused payment.

It was agreed, if the court should be of opinion that the plaintiff is entitled to recover, that judgment should be rendered for the sum of $110·60, and costs : otherwise judgment should be rendered for the defendants.

*Wilson,* for the plaintiff.

*Chamberlain, & Bennett,* for the defendants.

Upham, J. The plaintiff claims to recover in this case the amount of three several notes paid by him. They were joint and several notes, executed by the plaintiff and defendant, in payment of purchases made and money borrowed for the company, where both partners were present and participated in the contracts ; and the question arises, whether pay-

ment in these cases entitles the plaintiff to recover under the terms of his bond.

On the date of the bond neither of these debts existed in the company name, or against the company. The plaintiff and the principal defendant had incurred a joint and several liability on these notes, for the company debts; but this is different from their liability as partners, which is a joint obligation, on which they could not be individually sued.

The debts did not stand in the company name, and were not properly company debts at the time of the execution of the bond.

There is a farther objection to these debts being included under the bond, and that is, that they were not contracted by Bigelow any more than by Raymond, the other partner. Both were present participating in the trade, and gave their joint and several notes.

How, then, can it be said that these notes "were debts, dues or demands against the company, contracted by Enos Bigelow in the name of the company?"

It would have been very easy to have made the condition of the bond that Bigelow should pay all the company debts, or all notes given for such debts. Had such been the design, well understood by the parties, we can hardly conceive of their drafting a condition in which such contract would not have been perfectly apparent; and it appears to us exceedingly improbable that they should with such design have drafted such a condition as now appears in the bond.

A condition that Bigelow should pay all demands against the company "contracted by Bigelow in the name of the company," is very different from paying all demands against the company merely.

According to the plaintiff's construction the words, "contracted by Bigelow in the name of the company," are perfectly unmeaning; and that the contract would be precisely as the parties meant it, by striking such words out.

But would these words be inserted for no purpose? When

Raymond *v*. Bigelow.

sufficient had already been inserted to express precisely the intention of the parties, and when, of themselves, they would or might show a condition, which, according to the ordinary and necessary interpretation of the terms used, would form a contract it might in many instances be very proper and desirable to make.

It would be a new rule of construction which, under such circumstances, would induce us to strike out these words. It may have been the desire of Raymond, on terminating the partnership, to protect himself against any outstanding company debts which might have been contracted by Bigelow in the company name, without the knowledge of Raymond. If so, the condition would be very proper to effect this purpose.

As these terms, therefore, may form a substantial part of a contract, in their ordinary and natural interpretation, they must be so construed ; and we think with this construction the claims now sued for do not come within the condition of the bond. They were neither contracted for by Bigelow, and were not outstanding in the company's name on the date of the bond.

If this construction does not meet the design of the parties, it is their fault in drafting their contract in its present shape. The plaintiff has no remedy upon his bond, but can sue his former partner only for contribution. It is very clear, that there is nothing in the facts of this case, as applicable to the bond, that should hold the surety liable ; and the same rule of construction, in relation to the contract, must apply both against the principal and surety.

*Judgment for the defendants.*