### HARRIS *v.* SCOTT, *Adm'r, & a.*

The plaintiff's reply to the defendant's offer of certain stock at a specified price, that he would pay the price if the defendant had actually received a similar offer from others, as stated in her letter, and would give him their names, was a rejection of the defendant's offer and a new proposal. The defendant was at liberty to withdraw the offer after the plaintiff had mailed the new proposal and before the defendant had received it.

A contract between stockholders in a corporation owning more than half of its stock, to vote their stock the same way and control the affairs of the corporation according to a specified plan for a term of years, is unlawful.

A contract between two stockholders, that if one of them should die within a specified period the survivor should have a prior right to purchase the deceased one's stock, is not unlawful.

BILL IN EQUITY, for the specific performance of a contract for the sale to the plaintiff, by the defendant Annie G. Scott, of twenty shares of the capital stock of the Portsmouth Brewing Company. Facts found by the court.

The capital stock of the company consists of eighty shares, of the par value of five hundred dollars each. In March, 1888, the plaintiff, owning twenty-one shares, and George Scott, owning twenty shares, entered into the following written agreement: "For the purpose of having a better administration of the affairs of the Portsmouth Brewing Company, and to prevent deals and combinations between various stockholders for unworthy purposes, we hereby mutually and severally agree (1) to vote the forty-one shares we own, control, or can influence, invariably on the same side, for the purposes of election or on any motion made at any meeting. (2) To prevent any disagreement for whom or for what motions our votes should be cast, we severally agree to vote at every election for every officer and director now in office, unless both parties to this contract agree not to so vote; and in case of any vacancy, not to vote for any candidate unless both parties are in favor of his election; and, further, not to vote for any change of any kind, enlargement, alterations, improvements, purchase of real estate, or change in salaries or wages, unless both

are willing to vote for such purpose or purposes. (3) This agreement to apply to directors' meetings the same as stockholders'. No dividend to be declared unless both are in favor of it and the amount determined beforehand. (4) Neither party to sell his shares or any of them, nor to buy any other shares at a higher price than the holder paid for them. (5) Either party having his salary increased above the present amount, the other to have an increase of similar amount. (6) This agreement to remain in force two years from date." October 8, 1890, they agreed in writing that the foregoing contract in all its provisions be extended for five years from that date, and that "directions shall be left by will or otherwise to the executors of each, that should either party to this agreement die during the continuance thereof, the survivor shall have a prior right over any other party to purchase the shares of the capital stock . . . hitherto the property of the deceased."

George Scott died intestate April 24, 1892, and the defendant, Annie G. Scott, is administratrix of his estate.

About the first of July, 1892, Annie, in answer to a letter of the plaintiff's inquiring what she proposed to do with the stock, wrote him that she desired to sell it; that she had received several offers, and would give him the first right to purchase the twenty shares at $800 each. He replied July 5, saying, "If you have a *bona fide* offer of $800 for the whole twenty shares, I will pay you the same provided you send me the names of those who will pay you this amount so that I may be able to re-sell without loss if I wish." He inclosed a check for $100, and an unconditional bill of sale for her to sign. After depositing the letter in a letter-box he received a telegram from Annie saying, "I wish to reconsider the letter I wrote you for the present." The next day, July 6, the plaintiff replied as follows: "Your telegram received late yesterday afternoon. I had previously written you accepting your offer." July 11, Mrs. Scott wrote the plaintiff,—"I was informed immediately after sending you the letter about the twenty shares at $800 a share, that the parties wanted to take only part of them, but my lawyer informed me that a gentleman wished to take the whole twenty shares at $815 a share, so I have concluded at that price. The gentleman's name is Mr. John Sise, . . . so if you wish to accept that price, I will comply to your demands." And the next day she returned the check. This offer the plaintiff, by letter of July 13, declined to consider, claiming that the shares had already been sold to him. Mrs. Scott afterwards sold the shares through Sise to the defendant Conlon, but the formal transfer has not been executed.

The plaintiff prays for a specific performance of Mrs. Scott's contract of sale, or, if that is denied, that she be decreed "to give him the first right to purchase the shares at the expiration of the agreement of October 8, 1890."

*Samuel W. Emery* and *W. H. Looney* (of Maine), for the plaintiff.

*Frink & Batchelder*, for Annie G. Scott.

*Calvin Page*, for Sise and Conlon.

*Thomas E. O. Marvin* and *John E. Young*, for Ellen T. Scott.

CARPENTER, J.   No contract for the sale of the shares to the plaintiff was completed.   His acceptance of Mrs. Scott's offer was conditional.   Their minds did not meet.   If without disclosing the names of those who had offered her $800 a share, she had signed and returned to the plaintiff the bill of sale, he would have had the right to reject it and decline to take the stock.   His letter of July 5 was a rejection of Mrs. Scott's offer, and a new proposal.   Benj. Sa., s. 39.   To this proposal she did not assent. If the plaintiff's letter of the next day was an unconditional acceptance of her offer, it was ineffectual, because too late; it was made after he had notice that the offer was withdrawn.   If when she despatched the telegram she had known the contents of the plaintiff's letter of July 5, it might be evidence tending to show that she did not object to the acceptance on the ground that it was conditional.   But at that time she had neither actual nor constructive knowledge of the condition.   She made the public post her agent to receive from the plaintiff an unqualified acceptance of her offer, but not to receive a counter proposal or conditional acceptance.   She was not chargeable with knowledge of the condition until she received the letter. *Byrne* v. *Tienhoven*, 5 C. P. Div. 344; *Dunlop* v. *Higgins*, 1 H. L. Ca. 381; *Household Ins. Co.* v. *Grant*, 4 Exch. Div. 216, 221, 228; Benj. Sa., ss. 68–75; *Abbott* v. *Shepard*, 48 N. H. 14.

The plaintiff is not entitled to a decree requiring Mrs. Scott to give him now, or at any time, the prior right to purchase the stock. The contract of March 5, 1888, was unlawful. *Northern Railroad* v. *Railroad*, 50 N. H. 166, 179, 180; *Fisher* v. *Railroad*, 50 N. H. 200, 205, 206, 209–211; *Woodstock Iron Co.* v. *Richmond Extension Co.*, 129 U. S. 643; *West* v. *Camden*, 135 U. S. 507, 520, 521; *Fuller* v. *Dame*, 18 Pick. 472; *Guernsey* v. *Cook*, 120 Mass. 501; *Woodruff* v. *Wentworth*, 133 Mass. 309; Mor. Corp., ss. 516–519. The contract of October 8, 1890, in so far as it provides for the survivor's prior right to buy the shares, is not in itself unlawful. Whether it is so connected with the previous contract as to be tainted with its illegality is a question not considered.   If it is construed literally, it was broken when Scott died without leaving, by will or otherwise, directions that the plaintiff should have a prior right over any other party to purchase the shares; and the plaintiff's remedy for the breach is by action at law.   Assuming that it may properly be construed as an agreement that the sur-

vivor should have the prior right to purchase the shares of the legal representatives of the deceased party, and that such an agreement is not a testamentary disposition of property *(Towle* v. *Wood*, 60 N. H. 434), the plaintiff has already received all that the contract secured to him. An opportunity to buy the shares at the price for which they were finally sold was offered to him and rejected.

*Bill dismissed.*

CLARK, J., did not sit: the others concurred.