Carroll, ⎱
Feb. 7, 1905. ⎰

## LORD v. MEADER.

Where the owner of a wood lot has offered to sell the "timber" thereon for
a specified sum, a reply from a prospective purchaser to the effect that he
will take "all the growth" at the price named is not such an unconditional
acceptance as to constitute a contract between the parties, in the absence
of evidence that the terms employed to describe the subject-matter of the
negotiations were used synonymously.

The acceptance of an offer to sell standing timber, coupled with a stipulation
that the vendee shall have the use of the land for mill purposes, is not
sufficiently unconditional to establish a contract between the parties.

ASSUMPSIT, upon a contract for the sale of standing timber.
Trial by jury and verdict for the plaintiff. Transferred from the
June term, 1904, of the superior court by *Stone*, J. The court
ruled that the contract declared upon was conclusively established
by the correspondence between the parties, and the defendant
excepted.

October 19, 1903, the plaintiff wrote the defendant that he had
bought the timber on a farm adjoining her land in Tamworth, and
offered to purchase her place or the timber upon it, and pay all he
could afford to. The letter continues: "If you could agree on
the price for the timber, provided you decided not to sell the place,
I should want the use of the buildings while operating and a
chance to pile lumber, &c., until dry."

October 23, the defendant replied as follows: "I do not care to
sell the farm, but have decided to sell the timber on it My price
is $900. As for the use of the farm buildings you speak of, . . .
I cannot let you have them, as they are already rented for another
year."

October 26, the plaintiff wrote the defendant that he had looked
over the timber and thought it worth about $700 to cut, and that
if she would sell it for about $750 he would "look it over again
more thoroughly and pay you as much as any one can that pays
cash."

October 27, the defendant replied as follows: "In my last I
wrote you I would take $900 for the timber. My former price
was $1,200, and I think were I to confer with outside parties I
would get it, but I realize it would necessitate considerable trouble
on my part, as well as extra expense; so after thinking it over,
have decided to sell it to you, provided you give me what I ask.
I think if you look the timber over again, you will agree with me
that I am not asking an exorbitant price. I certainly cannot
afford to take any less."

Upon receipt of the defendant's letter of October 27, the plaintiff wrote that he would look the lot over more thoroughly on November 4, and then let her know whether he would purchase the timber at her price. On November 5 he wrote as follows: "I have examined your lot as I agreed to, and on account of owning the adjoining lot I agree to take it at your price and enclose check for $100, that you may know it is a *bona fide* trade, and the balance of the money I will send to you when the deed of conveyance is ready, or if you prefer will pay the balance to Mr. Pike Perkins (as when I saw Mr. Perkins last he had your deeds), if you decide to have him arrange for making the deeds. I buy all the growth, with the usual logging and mill privileges and reasonable time to move the same." On the same date the plaintiff also wrote to Perkins, who is referred to in the letters of both parties, as follows: "I decided yesterday to take the Meader lot and wrote her to that effect, enclosing $100, balance to be paid when deed is ready. I suggested that you could arrange for the deed, and I could settle balance with you when ready. I buy all the growth with the usual logging and mill privileges and reasonable time to move the same."

November 6, the defendant acknowledged the receipt of the plaintiff's check for $100, and further wrote: "I will attend to the other matter of which you write and let you know in regard to it as soon as I hear from Mr. Perkins." She subsequently returned the check, accompanied by the following: "Enclosed you will please find check which you sent to me as a deposit on the timber. I have since learned that Mr. Perkins, whom I authorized to sell the timber for me, had a while ago given the refusal of it to another party."

November 16, the defendant acknowledged the receipt of the foregoing letter and replied as follows: "I am surprised to learn that any one should try to influence you to do different from what you agreed. I intended to do as I agreed, and am now of the same mind; and I shall also expect you to do as you agreed. . . . I have been to trouble and expense, and your refusal to fulfil your agreement will cause me considerable damage. I will deposit your $900 subject to your order."

Under date of November 18, the defendant replied to the foregoing letter, as follows: "I have sent you the check. You have received it. The deal is off."

*Arthur L. Foote* and *James A. Edgerly*, for the plaintiff.

*Frank Weeks* and *Erastus P. Jewell*, for the defendant.

PARSONS, C. J.    The ruling that the evidence as to the letters between the parties conclusively established the contract of sale alleged was erroneous.    The plaintiff's letter of November 5, in which he says he had examined the defendant's lot and agrees to take it at her price, was not an unconditional acceptance of the defendant's offer to sell the timber on the lot.    While from the previous correspondence and the whole letter it may be plain that when the plaintiff said he would take the lot he could not be understood to include the land, nevertheless, unless it appeared that when the defendant said " timber " she meant, or could properly be understood to mean, what the plaintiff did by "growth," the two propositions did not refer to the same subject-matter, the minds of the parties did not meet, and there was no contract. Unless the identity in meaning of these terms conclusively appeared or was conceded, the plaintiff's letter was a rejection of the defendant's offer and the submission of a new proposition.    *Harris* v. *Scott*, 67 N. H. 437, 439; Benj. Sales, *s.* 39; Chit. Cont. (10th Am. ed.) 8–10.

In England the term " timber" does not include all kinds of wood.    " What kind of wood in England is deemed to be timber depends upon the custom of the country.    Wood which in some counties is called timber is not so in others."    *Jackson* v. *Brownson*, 7 Johns. 227, 234; *Chandos* v. *Talbot*, 2 P. Wms. 601, 606; *Aubrey* v. *Fisher*, 10 East 446, 455; *Dashwood* v. *Magniac*, [1891] 3 Ch. 306, 351.    In this country the term " timber," when applied to standing trees, generally means such as are suitable for use in the erection of buildings or in the manufacture of tools, utensils, furniture, carriages, fences, ships, and the like. *Alcutt* v. *Lakin*, 33 N. H. 507, 509.    It is common knowledge that the product of a wood lot is generally capable of sale or use for these purposes, or for fire-wood.    Trees which from their size or variety are unsuited for manufacturing purposes may be used for the latter purpose; while if not valuable from their location for use for fire, trees too small to be used in manufacture may be of value to the owner of the soil, if permitted to remain and grow.    The word " growth," for which the plaintiff stipulates, is plainly generic in meaning, and would include all the wood upon the lot.    Whether there was other growth upon the lot except what would be properly included within the term " timber" does not appear.

If all the standing trees upon the lot were of a size and kind suitable for manufacturing use, the terms used would be identical so far as this contract is concerned; for the word " growth " could not then have been understood to include anything but timber. The language used by the parties is not to be construed by arbitrary definitions of the words employed.    The question always is:

what did the terms employed mean to the parties using them? *Kendall* v. *Green*, 67 N. H. 557; *Wyndham* v. *Way*, 4 Taunt. 316; *Bullen* v. *Denning*, 5 B. & C. 842. If there were competent evidence establishing that to the parties "timber" and "growth" were identical in meaning, the plaintiff's acceptance would not be rendered conditional by his use of a different word. But the case discloses no evidence to that effect. The fact that the plaintiff considered it necessary to specify "growth" in his letter to the defendant, and to repeat the same term in his letter to Mr. Perkins, indicates that he understood that the defendant's offer of timber would not include all which he wished to get in his purchase. It also appears that the land was a farm upon which were buildings occupied by tenants. If there was wood or growth upon the farm not suitable for manufacture, but suitable for use as a supply for fire in the buildings upon the farm, such use of the firewood might be of value to the defendant in renting the farm; and it would not be probable that by the use of language generally excluding growth of such character, she intended under these circumstances to include it. If there was evidence tending to show that in this case the words "timber" and "growth" had identical meanings to the parties, or were from the character of the growth of the same effect, the burden was on the plaintiff to present it, and in the absence of the evidence he fails.

But assuming that it can be shown that the words "timber" and "growth," as used in the negotiations, were identical in meaning or effect, nevertheless the plaintiff's acceptance was still conditional, because he incorporated into it a provision that he should have the use of land for mill purposes. While an offer to sell timber may include the offer of reasonable time to cut and remove it, the case shows nothing upon which it can be held that such an offer includes the use of land for a mill. The plaintiff's letter was an acceptance of the defendant's offer, upon condition that all the growth should be included and he should have the right to use the defendant's land for the operation of a mill to manufacture it. As the defendant had not offered to sell all the growth, or to furnish land upon which the timber could be manufactured, the plaintiff's letter did not complete any contract between the parties. If the defendant had tendered the plaintiff a conveyance of all the growth with the right to remove it within a reasonable time, but refusing the use of the land for mill purposes, the plaintiff could have refused to accept the deed and have required the return of his check. To establish the contract alleged in this case, it must therefore appear that the defendant assented to the terms suggested by the plaintiff, and that her acceptance was communicated to him, either actually, or constructively by the mailing of a letter containing an

unconditional acceptance. *Prescott* v. *Jones,* 69 N. H. 305; *Perry* v. *Insurance Co.,* 67 N. H. 291, 294, 295; *Abbott* v. *Shepard,* 48 N. H. 14, 17.

Upon receipt of the plaintiff's letter of November 5, the defendant wrote as follows: " Your letter received with check enclosed. I will attend to the other matter of which you write, and let you know in regard to it as soon as I hear from Mr. Perkins." The matter written about by the plaintiff, other than the check, was the purchase of " all the growth with the usual logging and mill privileges," and the details of completing the conveyance. Whether the defendant then intended to accept the plaintiff's offer or not, she did not inform the plaintiff that she did. So far as the letter goes, she neither accepts nor rejects, but proposes to give her answer after consulting Mr. Perkins. The retention of the check for this purpose was not an acceptance of the offer. If the plaintiff was unwilling to permit his offer to stand, he could have withdrawn it and demanded the return of the check. Subsequently the defendant returned the check and refused to sell. As the evidence does not establish either that the plaintiff accepted the defendant's offer, or the defendant the plaintiff's, no contract was proved. The defendant's exception is sustained.

*Verdict set aside.*

All concurred.