Merrimack, }
Mar. 3, 1953. } No. 4151.

WILLIAM C. MALONEY

*v.*

BOSTON DEVELOPMENT CORPORATION & a.

*Maurice A. Broderick* and *James B. Sullivan* (*Mr. Broderick* orally), for the plaintiff.

*Devine & Millimet* (*Mr. Millimet* orally), for the defendant.

LAMPRON, J.   Because of its nature this case requires, for its proper understanding and disposition, a detailed analysis of the facts in their aspect most favorable to the plaintiff. *Riley* v. *Bank*, 86 N. H. 329, 330; *Leonard* v. *Manchester*, 96 N. H. 115, 117.

Plaintiff submitted to defendant a bid of $14,250 each to build, as a subcontractor, 23 of the 82 houses in the project. The following conversation then took place between the plaintiff and one MacNeil acting for the defendant. *D.* "We have decided to build those houses ourselves. How would you like to go up there and build those houses for me?" *P.* "Well it depends upon the terms and so forth." *D.* "Well your bid is a reasonable bid, but we have certain expenses of our own, and therefore we could build those houses for less than what you have put in for a bid. I will put a par of $13,000.00 per unit. You go up there and build those houses for me, and I will give you half of everything you save under $13,000.00." *P.* "All right, I will do that. In the meantime how much am I going to have until the project is finished to live on?" They settled on $125 per week.

The plaintiff testified that his bid of $14,250 embodied "all the estimates and costs of material and labor . . . plus the contractor's overhead and profit and other expenses, such as night watchman, and different things that one would have to do in preparing for the work, shanties etc." His bid was prepared on the basis of blueprints and specifications the same or similar to those involved in this action.

As to the setting of a par of $13,000 per house, plaintiff testified that MacNeil brought out the fact that if defendant was to build them they would have certain expenses, such as bookkeeping and overhead and the ordinary expenses of a contractor and that plaintiff's bid contained an item for profit. Hence the setting of a par of $13,000. There was nothing said about superintending or constructing the work necessary beyond the street line.

Maloney asked MacNeil to put the agreement in writing. He agreed and was to bring it up on his next visit to the project. The

plaintiff had been working three weeks when the defendant handed him a writing. Its material parts were as follows. "You are to use every effort to completely construct this project at a total cost to this company and Garden Homes Inc. not to exceed $1,066,000. If this project is constructed under your superintendence for less than $1,066,000 total cost, you are to receive as compensation, an amount equal to 50% of the difference between the actual cost and $1,066,000. During the period you are actually working as Superintendent on this project you are to be allowed to draw $125 each week against this amount. There will be no claim by this company for reimbursement of any amounts paid under this clause. The Boston Development Corporation reserves a right to terminate this contract on any of the following conditions: 1. Upon the recommendation of the Federal Housing Administration, Worcester Federal Savings & Loan Assoc. or the architect . . . to the effect that your employment in the capacity of superintendent is not desired by them or any of them on this job. 2. Or if in the opinion of Boston Development Corporation your work is not satisfactory or that the job is not progressing with sufficient speed."

Plaintiff refused to accept the writing. He pointed out to defendant, among other things, that he understood the $125 weekly payment was to be salary and not a drawal against the amount of the difference. Also that there was nothing said in the original conversation about the recommendation of the Federal Housing Administration, the Worcester Federal Savings & Loan Association and the architect. MacNeil was to redraft it and resubmit it to the plaintiff. This was never done.

Subsequently MacNeil told plaintiff "I have had complaints about your work—the superintendence, and it will be necessary before you continue any further to get a letter of approval from the Federal Housing Administration." Mr. Baker, State Director of that organization, told Maloney he had no province of approving any employee on any contract and that MacNeil was aware of this. Plaintiff received no further checks and left the job after being on it about six weeks. At that time the entire eighty-two cellars were excavated, forty footings and thirty-one foundations were poured and twenty houses framed.

To substantiate his claim for damages plaintiff testified to the cost of all labor and materials which he stated were necessary to construct the houses on the project. This amounted to $11,166 per house.

On cross-examination he admitted that he had left out certain

items which should also be charged in the cost. He then proceeded to prove the cost of most of these items. He failed however to prove the cost of gypsum blocks for firewalls in the cellars, also the cost of certain labor which he admitted should be charged for, the cost of wire lath and the cost of other items. Those proved amounted to $645.18 which brought the total cost to $11,811.18 per house.

There are certain items called for by the plans and specifications such as, supervision, electricity, telephone, temporary heat, trucking, cleaning of windows, snow removal, broom cleaning of premises, repairing damage during construction, insurance, the cost of which is substantial and which plaintiff omitted because he says they are part of the overhead defendant talked about. However plaintiff admitted that aside from mentioning overhead expense MacNeil never itemized the expenses which were to be part of defendant's costs and plaintiff never mentioned them either. He further admitted that he never said anything to MacNeil about omitting anything from or adding anything to the specifications and that MacNeil never told him he could omit anything.

Plaintiff introduced evidence that MacNeil in his application to the city of Manchester, for building permit, filed on behalf of Garden Homes, Inc., placed the cost of each house at $7,000. This is exclusive of plumbing, electrical work, driveways, walks, shrubbery, painting and decorating. He introduced further evidence that the Federal Housing Administration had estimated the cost of each house at $12,509. However this witness admitted on cross-examination that if the cost of some of the items called for by the specifications and omitted by plaintiff were taken into account the cost of each house could be at least $13,268.

The plaintiff had the burden of producing evidence from which the intention of the parties may be discovered, the nature and extent of their obligations ascertained and their rights determined. *Eastman* v. *Gould,* 63 N. H. 89, 90; *Cygan* v. *Megathlin,* 326 Mass. 732, 733, 734; *Caggiano* v. *Marchegiano,* 327 Mass. 574, 579; 17 C. J. S. 1217. He is sound in his contention that the meeting of the minds or concurrence of the parties is judged by what the parties say or do, by their overt acts, by what they give each other to understand and not by any undisclosed meaning or intention which one of the parties might have had. *McConnell* v. *Lamontagne,* 82 N. H. 423; *Eleftherion* v. *Company,* 84 N. H. 32; *Bianchi & Co.* v. *Bank,* 95 N. H. 14, 15.

It is also the law as the plaintiff contends, that a contract can be proved by spoken or written words or by acts or conduct (*Dedes* v. *Dedes*, 93 N. H. 215, 217) and that when there is a disputed question of fact as to the existence and terms of a contract it is to be determined by the trier of fact, in this case the jury. *First Nat. Bank* v. *Hunton*, 69 N. H. 509, 510; *Fitch Co.* v. *Company*, 81 N. H. 495, 497; *White Mt. Nat. Bank* v. *Malloy*, 93 N. H. 197, 199.

Before such issues can be submitted to a jury for determination, however, there is a preliminary question of law for the Trial Court. Is there any evidence from which it could be found that there was a contract between the parties? *Coles* v. *Railroad*, 74 N. H. 425, 426; *White Mt. Nat. Bank* v. *Malloy, supra*.

Plaintiff had submitted a bid of $14,250 each to build 23 houses. Mr. Baker of the F. H. A. testified that if certain items in the plans and specifications were taken into account the cost could be at least $13,268 each. The written agreement proposed by MacNeil to plaintiff was in terms of total cost to defendant. The plans and specifications were used in all the negotiations. The parties never discussed omitting or adding anything to them. MacNeil mentioned overhead, bookkeeping and other costs of his own, but did not itemize them and plaintiff never mentioned them either. The most essential point of the whole case is what costs were to be considered in determining if the houses could have been built under plaintiff's superintendence at a cost less than $13,000 each.

In our opinion there was no evidence on which a trier of fact could find a mutuality of assent on this vital point. There was therefore no evidence from which a contract between the parties could be found. The Trial Court acted properly in granting the motion for a nonsuit. *Russell* v. *Clough*, 71 N. H. 177, 178; *Riley* v. *Bank*, 86 N. H. 329, 331; *Caggiano* v. *Marchegiano, supra*.

Plaintiff's argument that the defendant admitted the existence of a contract between the parties in its bill in equity is of no avail. The paragraph to which he refers talks of a bonus he was to receive if there was a difference between $1,066,000 ($13,000 per house) and the actual construction total cost below that amount. His contention in this case is that certain costs of construction and not others were to be considered in determining if he was entitled to a bonus. Instead of being an admission that the minds of the parties met on that subject it proves, if anything, that there was no such assent on what costs were to be taken into account.

Nor did the plea of the statute of frauds by the defendant con-

stitute an admission of the existence of the contract claimed by the plaintiff. See *McCrillis* v. *Company*, 85 N. H. 165, 168. There was a general denial of liability by the defendant. The plaintiff's declaration was phrased in terms of "a cost less than $1,066,000" and "the cost of said construction." It is difficult to see how a plea of the statute to such a declaration would relieve the plaintiff of the burden of proving a definite understanding between the parties as to what costs of construction were to be considered if not all of them. The plaintiff did not take that position at a pre-trial hearing and devoted a good portion of a long trial in trying to establish what the agreement of the parties was.

In an application for a permit to build made to the city of Manchester for each house by MacNeil on behalf of Garden Homes, Inc., he estimated the cost at $10,000 then changed it to $7,000. These figures did not include the cost of plumbing, electrical work, driveways, walks, shrubbery, painting and decorating. These applications were made in December, 1948, some six or eight months before these parties entered into negotiations. They were no part of any conversation or dealing between Maloney and MacNeil and were made by him for a particular and different purpose. We fail to see how they could be a basis on which could be found a mutual understanding as to costs in the matter before us.

Lastly it seems to us that the weekly payments of $125 were part of one single integrated undertaking of the parties. Plaintiff's evidence shows that the par on each house, the payments to be made to him if they were built for less, and the weekly payments, were all decided together. In our opinion all these items were part of one single undertaking. If a contract had been arrived at it would have resulted from a single assent to the whole matter. There being no evidence from which a mutuality of assent could be found on the whole transaction, plaintiff cannot enforce part of it as a contract.

In view of the result reached it would serve no useful purpose to discuss plaintiff's arguments as to proof of damages and nominal damages.

*Exceptions overruled.*

GOODNOW, J., did not sit: the others concurred.