# William K. Bachli v. Earl D. Holt

[ 200 A.2d 263 ]

February Term, 1964

Present: Holden, C. J., Shangraw, Barney and Smith, JJ. and Daley, Supr. J.

Opinion Filed April 7, 1964

*James C. Lambeth* for the plaintiff.

*Davis, Martin & Free* for the defendant.

**Holden, C. J.** The plaintiff is a plumbing and heating engineer and contractor. He instituted this action against the general contractor to recover the final payment on the heating and plumbing contract which he performed during the defendant's construction of a restaurant for Marcelle MacDuff at Warren, Vermont. The defendant denied liability on the contention that he had no contractual agreement with the plaintiff and whatever liability existed for the plaintiff's performance of the plumbing and heating contract attached to the owner, Miss MacDuff.

Plans and specifications for the construction had been prepared and submitted by the owner's architect to several prospective bidders, including the defendant. The defendant was a friend of the owner and her family. However, due to the pressure of other work he returned the plans without bidding. As sometimes happens in such projects, the bids offered were higher than the owner and her family anticipated. At this stage, the defendant was requested to confer with the owner and the architect. The defendant was asked to figure the job with the understanding that if his estimate was equal or higher than the lowest bid he would be compensated for his effort in making the computation. The figure concluded by the defendant was about $10,000 less than that submitted by the previous lowest bidder. The owner then requested the defendant to construct the building on a cost plus basis with a warranty that the total cost would not exceed the lowest bid previously received. To this the defendant agreed.

During the course of these negotiations the defendant called the plaintiff. The defendant testified that he "asked the plaintiff for a price." Plaintiff's counsel inquired, "Q. To you? A. Yes."

With this, the defendant furnished the plaintiff with drawings and specifications for the plumbing and heating details. There were further conversations and a meeting between the plaintiff and the architect. After these negotiations, the plaintiff submitted his bid to the defendant in the following letter, copies of which were offered by both parties and received as exhibits:

August 23, 1960

Mr. Earl Holt,
S. Main Street,
Barre, Vermont.

       *Re: Marcelle's Restaurant*
       *Marcel Beaudin—Architect—Project #775*

Dear Earl—

This letter is to confirm our conversations with regards to the above subject work—

*Elec., Heating, Plumbing & Ventilating*
*work as originally quoted* .................... $ 12,169.00
Electrical Work ...................................... —2,276.00
_____

    Heat., Plumb. & Vent. work only ...$   9,893.00
    (all electrical work removed—

electrician to provide all wiring
for heating & vent. & oil burner
controls)

Additional for Fresh Air Duct,
louvre, screen, damper and rod
and teepee for fire place ................. 138.00

$ 10,031.00

Credit of $300.00 for oil tank to be
supplied by others ............................. —300.00

$ 9,731.00

Above quote based on using following different materials—
1) Std. weight cast iron soil pipe—not extra heavy.
2) Use of Detroit, American or Pittsburgh valves—not Jenkins.
3) Use of Wade 15 gpm Grease trap #W5115 instead of Josam type specified.
4) 25 ft. maximum offset—(horizontal) of 2″ oil tank vent.
5) 100 ft. maximum run (one line) of oil tank supply and return tubing.
6) Vent thru to roof to be provided at Bar sink and at dish washer.
7) Septic Tank to be provided but no installation or connections included (i.e. as specified).

Payments to be made twice monthly upon presentation of requisitions for above labor and materials at the job site. Payment due within ten days of presentation of requisition. No retainage to be withheld. Final payment upon completion due within thirty days.

Yours truly,

William K. Bachli.

WKB : mb

The defendant testified that he had a "so-called agreement" with the plaintiff. He did not consider that the letter constituted an agreement until such time as it was approved by the owner or her architect. The architect did approve and the plaintiff commenced work on the

project. At that time the plaintiff had no dealings with the owner and he did not meet her until the job had been underway for several weeks.

As the plumbing and heating progressed, the plaintiff submitted requisitions for payment to the defendant. Upon approval of the several requisitions by the architect, the plaintiff was paid by the defendant's personal checks in the amount of $7,287.00, from funds provided the defendant by the owner. Upon completion of the plumbing and heating, the plaintiff's request for final payment was refused by the defendant for the reason that he had received no funds from the owner for this purpose.

The defendant presented evidence in opposition to the plaintiff's contention that his undertaking was with the general contractor alone. This included a letter written by the defendant to the owner on August 23, 1960 stating that the architect had engaged the plumbing, heating and electrical contractors. It stated that the defendant waived his usual five percent surcharge on the payments to the subcontractors for the reason that supervision of their work was to be done by the architect. There was no showing that the contents of this letter were communicated to the plaintiff. There was evidence that the plaintiff had endeavored to collect final payment from the owner before proceeding against the defendant. And the defendant never specifically agreed to pay the plaintiff in the event of the owner's default. There was also evidence that the defendant had nothing to do with the problems that developed in connection with the plaintiff's performance of his contract and that these were settled by the architect.

Upon this state of the evidence, the trial court submitted but one issue to the jury: "Was there an understanding or agreement mutually entered into between these parties whereby it was intended by both that the plaintiff would perform the labor and furnish the material as revealed by the evidence and for which the defendant was to pay him $9,731?" The jury returned a verdict for the plaintiff. The defendant moved for judgment notwithstanding the verdict and requested the court to set aside the verdict as against the weight of the evidence. From the court's order denying these motions the defendant has appealed.

■ By moving for judgment notwithstanding the verdict, the defendant raised substantially the same questions of law which attend a motion for a directed verdict. It is to be treated in the same way.

The legal problem is whether the evidence considered in its most favorable aspect to the verdict establishes a cause of action in the plaintiff. Eliminating considerations of weight, credibility and conflicting inferences, the question is whether the result reached by the jury is sound in law on the evidence produced. *Sawyer* v. *Ewen*, 122 Vt. 320, 322, 173 A.2d 549; *Whitmore* v. *Mutual Life Insurance Co.*, 122 Vt. 328, 330, 173 A.2d 584; *Johnson* v. *Hardware Mutual Casualty Co.*, 109 Vt. 481, 499, 1 A.2d 817; *Tarbell* v. *Grand Trunk Railway Co.*, 94 Vt. 449, 451, 111 Atl. 567.

■ It was the defendant who called upon the plaintiff to submit a bid for the plumbing and heating contract. When the plaintiff complied in his letter of August 23, 1960 he made an offer to the defendant to perform the work specified at the price given. Until this bid was accepted, no rights or liabilities were created. But when it was accepted by the offeree, the contract was complete. *Levinson* v. *United States*, 258 U.S. 198, 42 S. Ct. 275, 66 L.Ed. 563; Williston on Contracts, 3rd (Jaeger) Ed. §82.

■ It is significant that the letter was directed to the defendant alone. The offer could be accepted only by the person to whom it was addressed. Neither the owner nor her architect could accept the bid, since it was extended only to the defendant. A prospective party has the right to select with whom he will contract and an outsider has no standing to intrude. *Nutmeg State Mach. Corp.* v. *Shuford*, 129 Conn. 659, 30 A.2d 911, 912, 147 A.L.R. 1168; *Boston Ice Co.* v. *Potter*, 123 Mass. 28, 25 Am. Rep. 9; Williston on Contracts, 3rd (Jaeger) Ed. §80.

It is clear from the defendant's own testimony that there was a binding acceptance of the plaintiff's offer. Both parties responded accordingly. The plaintiff went on the job and did the work. All prior payments were made by the defendant according to the terms stated in the plaintiff's letter.

■■ An acceptance of a proposal may be accomplished by conduct as effective as though done verbally where it appears the acts of the parties conform to the terms proposed. *Porter* v. *Everts' Estate*, 81 Vt. 517, 522, 71 Atl. 722; *Aver & Twitchell* v. *Robertson Paper Co.*, 94 Vt. 473, 482, 111 Atl. 570. If the defendant had some mental reservations that he was acting for the owner, without any personal

obligation to compensate the plaintiff, it was for him to openly announce his position. The language and acts of a party to a contract will receive such operation as the opposite party is fairly entitled to afford them under the circumstances. He will not be entitled to claim a different consequence as the result of some undisclosed mental reservation which he had when the contract was made. *Right Printing Co. v. Stevens,* 107 Vt. 359, 365, 179 Atl. 209, 100 A.L.R. 528; *Conger v. Gruenig,* 117 Vt. 559, 562, 96 A.2d 821.

On the evidence brought before them, a jury had adequate reason to find that the plaintiff was entitled to understand that his undertaking was with the defendant as principal contractor. Its conclusion that the plaintiff was justified in looking to the defendant for the full payment of the price he had offered was sound in law. The defendant's motion for judgment was properly overruled.

The defendant's second assignment of error concerns the denial of his motion to set the verdict aside as against the weight of the evidence. The ruling of the court on this request was entirely discretionary. No reasons are advanced capable of demonstrating an abuse of discretion. Our reading of the full record satisfies us that there was no cause in law or as a matter of discretion to justify the trial court in overthrowing the result reached by the jury.

*Judgment affirmed.*