Belknap
No. 7805

TRIMOUNT BITUMINOUS PRODUCTS CO.

v.

CHITTENDEN TRUST COMPANY
AND
MUNSON EARTH MOVING CORP.

November 16, 1977

948

*Wescott, Millham & Dyer,* of Laconia (*Mr. Peter V. Millham* orally), for the plaintiff.

*Nighswander, Lord, Martin & KillKelley,* of Laconia (*Mr. Willard G. Martin, Jr.,* orally), for the defendants.

DOUGLAS, J. This case concerns the existence of contracts to refinance the business of a third party allegedly created through the exchange of correspondence among the parties. The Master (*Charles T. Gallagher,* Esq.) found that neither the Chittenden Trust Company nor defendant Munson Earth Moving Corporation had breached its contract, and that Trimount, the plaintiff, had suffered no compensable damages. The plaintiff's exceptions to these rulings were reserved and transferred by *Batchelder,* J. Because the master committed no errors of law and his findings are supported by the evidence, the exceptions are overruled.

All three parties in this case were creditors of Paquette Paving, Inc. In March 1972, Paquette owed the plaintiff nearly $30,000 for materials purchased on credit for its business operations and a much larger sum to the bank. Munson first became a creditor when it advanced money to Paquette, which at the time was a subcontractor on a Munson job. Munson thereafter made further advances. In order to avoid bankruptcy, Paquette entered into negotiations with its creditors. Plaintiff characterizes these negotiations as having culminated in a moratorium agreement, which its letter of April 12, 1972, to Paquette accepted. The letter reads:

> This is to certify that there is a balance of $29,924.41 due us from [Paquette] and we agree to forego immediate legal action on the basis that you make prompt evidence to us of bank financing.
>
> If the financing discloses an indication that you will be in a position to carryon [sic] a profitable business we will agree to accept payment of the $29,924.41 balance on

the basis of 20% each year over a five year period starting October 15, 1972. This arrangement to be guaranteed by a 6% interest bearing note.

Chittenden's letter to Trimount was dated May 11, 1972. It reads:

Please be advised that satisfactory refinancing of the existing loans of the above corporation to this Bank have been arranged over four and five-year terms.

It is our understanding that additional financial assistance has also been obtained from the Munson Earth Moving Corporation.

I trust the above information will be helpful to you.

Munson's letter to Trimount on May 18, 1972, "confirmed" that adequate financing would be provided:

It is our pleasure to confirm that adequate financing for the Paquette Paving, Inc., of Ashland, New Hampshire, will be provided by this Corporation and from the Chittenden Trust Company of Burlington, Vermont, from whom a letter of confirmation may also be obtained.

This financing will be adequate to satisfy whatever requirements are necessary to maintain the business in a healthy condition for whatever time period shall be necessary, initially set for a five year period.

Your cooperation has been generous and is recognized by this firm. It is cooperation like yours that will help pull these men through.

Both defendants did in fact extend further financing to Paquette, and Munson obtained a controlling interest in Paquette for security. However, it never utilized the power that interest provided to assume actual control of Paquette's operations. Until late summer of 1974, Paquette made regular payments on all current accounts of Trimount and reduced the old account to $11,955. Then Paquette requested additional credit from Chittenden, which was granted only after Munson agreed to guarantee Paquette's indebtedness. Paquette failed to make payments and Chittenden called in Munson's note. Without notifying the other creditors, Munson in turn exercised its control to take over Paquette and forced it into bankruptcy.

Immediately before its default, Paquette completed a job in Laconia for which it purchased $13,915 of materials from Trimount on credit. That job generated an account receivable which was paid into court, part of which forms the res on which jurisdiction was founded. Trimount claims no special interests in these funds, but assigns them to cover its damages arising from the alleged breaches of the contracts. At the time of bankruptcy, Paquette owed Trimount $25,871.19 on all its outstanding accounts.

The problems of offer and acceptance have long ceased to be the sole cutting edge of contract law. The principles for interpreting a course of negotiations are relatively well settled. *See generally* 1 A. Corbin, Contracts §§ 22–94 (1963); 1 S. Williston, A Treatise on the Law of Contracts §§ 22–98 (3d ed. 1957). Plaintiff's first contention is that its letter of April 12 constituted an acceptance of a prior moratorium agreement, thus creating binding obligations, similar to those arising in business subscriptions, *see* 1 S. Williston, *supra* § 117, between itself and any parties theretofore committed. *Martin v. Meles,* 179 Mass. 114, 60 N.E. 397 (1901); 1 S. Williston, *supra* § 23, at 52. Admittedly, a binding contract does arise from a parol agreement unless the parties did not intend to be bound until the agreement was reduced to writing. *Dohrman v. Sullivan,* 310 Ky. 463, 467–69, 220 S.W.2d 973, 975–76 (1949); *see Genesco, Inc. v. Joint Council 13, United Shoe Workers,* 341 F.2d 482, 486 (2d Cir. 1965). *But cf. Hageman & Pond, Inc. v. Clark,* 69 Wyo. 154, 238 P.2d 919 (1951). Nonetheless, we cannot know from the record whether a contract did in fact result from the course of negotiations among the parties before the April 12 letter or if its terms were sufficiently definite to enforce. *Laseter v. Pet Dairy Prods. Inc.,* 246 F.2d 747, 750 (4th Cir. 1957) (terms too indefinite to be enforced); *see Willmott v. Giarraputo,* 5 N.Y.2d 250, 253, 157 N.E.2d 282, 283, 184 N.Y.S.2d 97, 98–99 (1959) (omission of material term fatal to contract formation). *See also* 1 A. Corbin, *supra* § 29. Since the party claiming to rely on the preliminary oral contract has not borne its burden of proving it, the master correctly refused to find such a contract. *Maloney v. Boston Dev. Corp.,* 98 N.H. 78, 81, 95 A.2d 129, 131 (1953); *Mississippi & Dominion Steamship Co. v. Swift,* 86 Me. 248, 254–55, 29 A. 1063, 1065 (1894); *see Hess v. Shurtleff,* 74 N.H. 114, 115–16, 65 A. 377, 378 (1906).

■ If the alleged contracts that form the substance of this litigation arose at all, they must have been created expressly through the exchange of letters themselves or impliedly by the conduct of the parties from which a mutual understanding can be inferred, *McConnell v. Lamontagne*, 82 N.H. 423, 424, 134 A. 718 (1926); *Bloomgarden v. Coyer*, 479 F.2d 201, 208 (D.C. Cir. 1973). Trimount's April 12 letter is susceptible to interpretation as an offer. It promises to refrain from legal action against Paquette if the latter can obtain financing sufficient to conduct a profitable business and agrees to pay its outstanding debt according to a stated schedule. By accepting this offer in a later letter, Paquette's rights and obligations were sufficiently well defined to enable a court to determine performance and measure damages. *Thomas v. Cate*, 78 Idaho 29, 296 P.2d 1033 (1956); *Ross v. Mancini*, 146 Me. 26, 76 A.2d 540 (1950); 17 Am. Jur. 2d *Contracts* § 76, at 416 (1964). But the offer is addressed only to Paquette and there is no indication that Chittenden or Munson ever received copies. Only the offeree can accept an offer. *Bachli v. Holt*, 124 Vt. 159, 163, 200 A.2d 263, 266–67 (1964); *Boston Ice Co. v. Potter*, 123 Mass. 28, 30 (1877). Nonetheless, the preliminary discussions among the parties indicate that the defendants either requested or at least expected that such an offer would be made. Even if they did not have actual knowledge of this specific offer, they must have known that Trimount was extending credit to Paquette and refraining from suing because of their promises. "Preliminary actions and communications, even though not in themselves legally operative as an offer . . . may nevertheless be highly important in determining whether a contract has subsequently been consummated and what are its terms." 1 A. Corbin, *supra* § 22, at 66. Hence, we find Trimount's letter to be an offer or sufficient evidence of an offer.

■ The bank advised Trimount that it had satisfactorily refinanced Paquette's loans. Whether this was an acceptance of Trimount's offer or a counteroffer which Trimount then accepted by its subsequent performance need not be belabored. In any event, the bank bound itself to no more than providing satisfactory refinancing. Its letter indicates that it had executed its promise. Its later extension of credit was not part of the agreement and had to be secured by Munson before granted. We agree with the master that the bank fully performed its contract.

Munson's letter was more detailed. It agreed to provide financing for whatever requirements are necessary for at least five years. Again, we need not worry about the status of this letter as acceptance or counteroffer. The parties obviously intended to enter into a contract; they have behaved as though they were so bound. This court will not rely on overly technical legal logic to defeat the intentions of the parties, but will attempt to interpret the ambiguities of the agreement to conform to those intentions. *See* 1 S. Williston, *supra* § 37, at 110–11.

Plaintiff relies heavily on the terms "whatever requirements" and "healthy condition." It claims that Munson never placed Paquette in a healthy position or that because Paquette was forced into bankruptcy, Munson did not provide adequate financing. The record refutes the first contention as a matter of fact. Partially as a result of Munson's financing, Paquette was able to operate on at least a break-even level for two years. During that time, it substantially reduced its outstanding debt to Trimount and remained current on all its new accounts with the plaintiff. The evidence indicates that Paquette's ultimate demise resulted from gross mismanagement by its president, over whom Munson did not in fact exercise control, and not from inadequate financing.

■ Our final inquiry confronts us with the meaning of the phrase "whatever requirements." The plaintiff argues that even if Paquette were put in a healthy condition, Munson obligated itself to do more. However, this reads the letter too liberally. Munson agreed to provide whatever financing was necessary for the business. Had Paquette's president not diverted a substantial segment of its funds from that company's concerns, it might well have survived. We do not read more into the letter than a good faith effort to maintain the business as a going concern. Munson made that effort. It is a relatively small company with an annual gross of $1,500,000; yet it provided credit and guaranteed loans of over $650,000 for Paquette during a three-year period. This shows a substantial commitment by Munson.

Because we hold there is no liability on the contracts, we need not consider plaintiff's remaining contentions.

*Exceptions overruled.*

LAMPRON, J., did not participate in the decision of this case; the others concurred.