Clark v. Mitchell                          CV-94-592-M    07/02/96 P
                UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE


Michelle Clark,
        Plaintiff,

        v.                                        Civil No. 94-592-M

Donald Mitchell;
Electronics Corporation of America;
Rockwell International;
and Allen-Bradley, Inc.,
        Defendants.


                          O R D E R


        This is an employment discrimination case that appeared to

be settled on the eve of trial.  However, a dispute subsequently

arose as to both the fact of and nature of the "settlement,"

prompting defendants to file a Motion to Enforce Settlement

Agreement.  The parties filed memoranda and an evidentiary

hearing was held.  The issues before the court are:  (1) whether

plaintiff's attorney agreed to settle the case on her behalf; and

(2) if he agreed to a settlement, was plaintiff's attorney

authorized to bind his client?


                      **Factual Findings**

     On June 23, 1994, plaintiff Michelle Clark retained the law

firm of Sulloway & Hollis to represent her in an employment

discrimination case.  Attorney Edward M. Kaplan ("Attorney Kaplan"), a partner at Sulloway & Hollis, assumed responsibility for the matter.  On November 22, 1994, Attorney Kaplan filed an employment discrimination complaint in this court against Ms. Clark's former employers, Allen-Bradley, Inc., Rockwell International, Electronics Corporation of America, and her former supervisor, Donald Mitchell.  Defendants are represented by the law firm of Jackson, Lewis, Schnitzler & Krupman.

The parties did not begin meaningful settlement discussions until February of 1996.  Shortly thereafter, on March 4th, Attorney Kaplan advised defense counsel that this matter could be settled for payment of $100,000 to plaintiff plus delivery of acceptable letters of reference and apology from the defendants.  Attorney Kaplan testified that he made this representation based upon his own understanding of the authority given him by his client.

At about the same time, Attorney Kaplan's paralegal told plaintiff that Attorney Kaplan had demanded "six-figures" and the letters of recommendation and apology.  Plaintiff responded that the demand was "o.k.," she said she didn't care if it was

2

$100,000 or $200,000, but felt the case was worth at least that (presumably meaning at least $100,000).

In response to Kaplan's demand, defendants made a counter-offer on March 8th of $46,000 plus the letters of recommendation and apology. On March 11th, while plaintiff was present, Attorney Kaplan rejected that counter-offer and advised defense counsel that plaintiff was standing firm on the amount previously demanded.

On March 13th, defendants expressed their willingness to settle the matter on Attorney Kaplan's previously announced terms — payment of $100,000 and delivery of acceptable letters of recommendation and apology. But defense counsel also required a confidentiality agreement, to which Attorney Kaplan consented. Defense counsel advised Attorney Kaplan that they would prepare the letters as well as a formal written settlement agreement and appropriate releases, no doubt anticipating his routine review and approval.

Later that same day, Attorney Kaplan called plaintiff to inform her that defendants had agreed to settle the case for

$100,000 plus the letters of recommendation and apology. Plaintiff at that point told Attorney Kaplan that she had never authorized him to settle for $100,000. Additionally, plaintiff maintained that $100,000 was unacceptable to her because, under her contingency fee agreement with Sulloway & Hollis, a portion of the $100,000 recovery would be paid to Sulloway & Hollis to cover attorneys' fees and costs.

On March 14th, Attorney Kaplan informed defense counsel that plaintiff needed an additional $47,000 ($100,000 for plaintiff and $47,000 to cover legal fees and costs) in order to settle. However, upon reflection and on his own initiative, Attorney Kaplan later called to withdraw that demand for additional money, because he believed he was committed to his earlier agreement on the $100,000 amount.

Later that same day, Attorney Kaplan received drafts of a proposed letter of recommendation and letter of apology, as well as drafts of defendants' proposed written settlement agreement and release. The agreement and release included the basic terms of settlement previously discussed by counsel (payment of $100,000 to plaintiff and delivery of the two acceptable

4

letters). But, other significant terms were included as well (e.g. an indemnity clause requiring plaintiff to indemnify defendants; a nondisparagement clause requiring plaintiff not to speak ill of defendants; a substantial liquidated damages clause requiring plaintiff to pay $100,000 in damages should she breach the confidentiality agreement; and a clause restricting plaintiff's future association with former colleagues still employed by defendants).

On March 20th, Attorney Kaplan sent defense counsel a letter, via facsimile, registering plaintiff's objection to the new terms in the draft settlement agreement. In his letter, Attorney Kaplan specifically rejected the liquidated damages clause and the indemnity clause, and requested modification of the nondisparagement clause.

Defendants assert, nevertheless, that a final settlement was effected and that Attorney Kaplan agreed to the settlement with full authority from his client. Therefore, they move to enforce the terms set out in the written draft settlement agreement and release, except those terms affirmatively rejected by Attorney Kaplan in his March 20th letter. However, defendants further

5

assert that plaintiff is required under the settlement reached to "negotiate in good faith" as to those terms identified as unacceptable by Attorney Kaplan (presumably the right to good faith bargaining is alleged to be part of the settlement).

## Discussion

A.    **Settlement**.

Settlement agreements are in the nature of contracts and so are generally governed by principles of contract law - in this case, New Hampshire's law of contracts. See McIssac v. McMurray, 77 N.H. 466 (1915). Before an enforceable contract can arise, there must be a mutual meeting of the minds. That is, the parties must have agreed to the same terms. Turcotte v. Griffen, 120 N.H. 292, 293 (1980); Maloney v. Company, 98 N.H. 78, 82 (1953). See Trimount Bituminous Prods. Co. v. Chittendon Trust Co., 117 N.H. 946 (1977). There is no meeting of the minds where the acceptance of an offer is conditional. See Arapage v. Odell, 114 N.H. 684, 686 (1974); Lord v. Meader, 73 N.H. 185, 187 (1905). Accordingly, where acceptance is conditioned upon additional material terms that were not offered, there is no meeting of the minds and thus, there is no contract. Arapage, 114 N.H. at 684; Harris v. Scott, 67 N.H. 437, 439 (1893).

6

Similarly, where counsel accepts part of an offer, but rejects other parts, there is no agreement between the parties even as to those parts nominally "accepted." <u>Arapage</u>, 114 N.H. at 684.

Defendants' position that an enforceable agreement was reached in this case is substantially undermined by their own description of the material terms of the "agreement in fact." Three materially different deals have been described by defendants, and it is entirely unclear what precise settlement agreement defendants are moving to enforce.[1]

---

[1] For example, in Defendants' Motion to Enforce Settlement Agreement, the settlement sought to be enforced is described as "$100,000 and a letter of reference and apology." Defendants' Motion to Enforce Settlement, p.6. In contrast, in Defendants' Reply to Plaintiff's Opposition to Motion to Enforce Settlement, defendants describe the agreement as payment of $100,000, the two letters, a confidentiality agreement, a nondisparagement agreement, and an agreement precluding plaintiff from seeking re-employment with defendant companies. Defendants' Reply to Plaintiff's Opposition to Motion to Enforce Settlement, p. 3. Finally, during oral argument and in Defendants' Reply to Plaintiff's Supplemental Opposition to Motion to Enforce Settlement, defendants describe the settlement agreement as payment of $100,000, the letters, a confidentiality agreement, a clause precluding the plaintiff from seeking re-employment with defendant companies, and an agreement to negotiate in good faith on a liquidated damages clause, an indemnification clause and a nondisparagement clause. Defendants' Reply to Plaintiff's Supplemental Opposition to Motion to Enforce Settlement, p. 5-7.

7

While New Hampshire's law broadly favors enforcing settlement agreements made by attorneys on behalf of their clients, still, before an "agreement" can be enforced counsel must have first agreed to the same material terms. See Turcotte, 120 N.H. at 293; Maloney, 98 N.H. at 82; Lord, 73 N.H. at 185. In this case, there was no meeting of the minds on at least two material terms of the alleged settlement.

The New Hampshire Supreme Court has consistently upheld agreements where the written contract mirrors the material terms of the oral agreement. See Bossi v. Bossi, 131 N.H. 262, 265 (1988); H & B Construction Co, Inc. v. James R. Irwin & Sons, Inc., 105 N.H. 279, 282 (1964). Here, however, the draft settlement agreement contains terms that differ markedly from those agreed to orally by Attorney Kaplan — the $100,000 liquidated damages clause and the indemnity clause, to name but two. These terms are not mere recitals, but are substantive, material matters. The liquidated damages clause (which defense counsel concedes is material) and the indemnity clause, describe significantly different obligations than agreed to by Attorney Kaplan. There is simply no evidence that Attorney Kaplan agreed to a settlement including these additional material terms and, in

8

fact, the evidence shows that he rejected most of them in a letter dated March 20th. Defense counsel's testimony confirms that the liquidated damages clause was never discussed with Attorney Kaplan[2]. Defendants assert that the enforceable agreement actually reached between counsel includes the referenced additional terms (i.e., the liquidated damages and indemnity clause), but it is apparent from the evidence that there was never a meeting of the minds on any settlement including those additional terms, and, as a result, there is no enforceable agreement.

This case is analogous to <u>Arapage</u>. In that case, the court held that where counsel accepted the monetary part of a settlement offer, but specifically rejected other provisions, there was no enforceable agreement between the parties. <u>Arapage</u>, 114 N.H. at 685. Here, although Attorney Kaplan readily concedes he agreed to certain provisions and personally considered the case settled on those terms, he also specifically rejected other material provisions proposed by defendants. Curiously, however,

---

[2] Review of the unofficial transcript from the real time floppy disk supports the court's recollection of defense counsel's testimony. Of course, an official transcript must be prepared for complete reliability.

defendants are not seeking to enforce the agreement Attorney Kaplan concedes.  It is _defense_ _counsel_, not Attorney Kaplan, who have strived mightily to _disprove_ the enforceable agreement that Attorney Kaplan concedes, by trying to prove a materially different one.  Given defendants' position, there simply was no enforceable settlement between the parties, even as to the portions of the offer described by defendants which were nominally "accepted" by Attorney Kaplan.  In short, the broad settlement sought to be enforced by defendants is not a settlement that was ever "in fact reached by counsel." _Bock v. Lundstrom_, 133 N.H. 161, 164 (1990).

Defendants' argument that plaintiff should be ordered to negotiate the remaining disputed terms in good faith also completely misses the point.  New Hampshire law recognizes no middle ground between an enforceable settlement agreement and no settlement agreement at all.  The parties either have a complete, enforceable settlement agreement, requiring no further negotiation on any material point, or they have no settlement agreement at all.  Defendants' own recognition of the need to further negotiate material terms of course completely undermines their assertion that an enforceable agreement was in fact

10

reached.  If defendants were moving to enforce an agreement consisting solely of those material terms Attorney Kaplan had orally agreed to, the result might well be different, but they are not.

**B.  <u>Authority</u>.**

The New Hampshire rule regarding the power of an attorney to bind a client by settlement is one of the most liberal in the country.  <u>Ducey v. Corey</u>, 116 N.H. 163, 164 (1976).  As a matter of longstanding practice in New Hampshire, "action taken in the conduct and disposition of civil litigation by an attorney is binding upon [a] client," if he or she is acting within the scope of authority granted by the client.  <u>Manchester Housing Auth. v. Zyla</u>, 118 N.H. 268, 269 (1978); <u>See</u> <u>Burtman v. Butman</u>, 94 N.H. 412 (1947); <u>Alton v. Gilmanton</u>, 2 N.H. 520 (1823).  Whether an attorney is acting within the scope of his or her authority is a question of fact.  <u>Norberg v. Fitzgerald</u>, 122 N.H. 1080, 1082 (1982); <u>Gauthier v. Robinson</u>, 122 N.H. 365, 368 (1982).  An attorney's testimony regarding his or her authority, if believed, is sufficient to support a finding of authority to bind - even in the face of contrary client testimony.  <u>See</u> <u>Norberg</u>, 122 N.H. at 1082.

Since an attorney's authority only becomes a critical issue "if a settlement agreement has in fact been reached by counsel," Attorney Kaplan's authority to settle this case is not a critical issue. Bock, 133 N.H. at 164 (quoting Halstead v. Murray, 139 N.H. 560, 576 (1988)) (emphasis added). Nevertheless, Attorney Kaplan did have the authority to bind his client by settlement. Attorney Kaplan's uncontradicted testimony established that he was authorized to demand a settlement of $100,000, and the evidence also established that his client concurred in a "six figure" settlement, necessarily understanding that $100,000 is "six figures." Plaintiff was also duly informed that a "six figure" demand had been made, and she did not object to or question that demand, but responded that it was "o.k.;" she said she didn't care if it was $100,000 or $200,000. Communication could have been more precise, but a $100,000 figure was not only very reasonable under the circumstances, it also fit the "six figure" description, particularly in light of defendants' earlier low and middle "five figure" offers. So, plaintiff understood that a $100,000 demand had been made and she failed to raise any question, probably because she did not do the arithmetic necessary to calculate the net monetary result to her after fees and expenses.

## Conclusion

As the settlement sought to be enforced by defendants is not a settlement that was ever in fact reached by counsel for both sides, their Motion to Enforce Settlement (document no. 53) is necessarily denied.

The court granted Attorney Kaplan's motion to withdraw under these circumstances for good cause shown, and Attorney Hodes indicated that he appeared on behalf of plaintiff only for purposes of handling this motion. Accordingly, plaintiff shall obtain new counsel or file a pro se appearance on or before August 30, 1996, after which a scheduling conference will be held.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

July 2, 1996

cc:  Paul W. Hodes, Esq.
     Byry D. Kennedy, Esq.
     Joan Ackerstein, Esq.
     Edward M. Kaplan, Esq.

13