Strafford, July 2, 1947. } No. 3677.

AVELYN FREY BURTMAN

*v.*

J. S. BUTMAN *and* STANLEY M. BURNS, *Individually and as Surviving Ex'rs* OF THE WILL OF ABRAHAM BURTMAN.

*McLane, Davis & Carleton* and *Stanley M. Brown (Mr. Brown* orally), for the plaintiff.

*Hughes & Burns* and *H. Thornton Lorimer (Mr. Burns* orally), for the defendants.

KENISON, J. The demurrer admits as true the facts properly pleaded in the petition for specific performance. *Glover* v. *Baker*, 76 N. H. 393; *Forest Products Co.* v. *Company*, 75 N. H. 493.

The Attorney General was not a party to the agreement and his approval was not obtained. It is clear that the Attorney General is an indispensable party, both at common law and by statute, in the enforcement and supervision of charitable trusts. *Souhegan Bank* v. *Kenison*, 92 N. H. 117; *Akscyn* v. *Bank*, 78 N. H. 196. There is nothing contained in the statute creating a register of public trusts in the Attorney General's office (Laws 1943, *c.* 181, as amended by Laws 1945, *c.* 92), which requires his approval of claims for or against the estate even though the compromise of such claims may indirectly affect a residuary charitable trust created therein. Whether the Attorney General should be notified concerning such claims involves questions of policy and procedure on which the Legislature has remained silent. If notice to the Attorney General and his approval are necessary, it will require legislative authority therefor. We know

of no decision which requires the Attorney General's approval of all probate proceedings or the actions of executors in administering the estate before the charitable trust is in existence. In a jurisdiction where broad powers already exist in the Attorney General over the administration of charitable trusts, it was thought necessary to have additional statutory procedure to require notice of probate proceedings which might affect charities. 30 Mass. L. Q. (No. 1) 22-34 (1945).

If this were a "typical situation in which the Attorney General should and probably will receive notice" (Note, State Supervision of the Administration of Charitable Trusts, 47 Col. L. R. 659, 662 (1947), no such notice is required in the absence of legislation so providing. The demurrer is overruled insofar as it relies on the position that the Attorney General was an indispensable party entitled to notice.

There appears to be some support for defendants' contention that the compromise agreement cannot be specifically enforced since the bill fails to allege that the agreement was in writing, filed in court or entered upon the docket. *Fernald* v. *Ladd*, 4 N. H. 370; *Vaughan* v. *Morrison*, 55 N. H. 580, 590. However, these cases must be read in connection with *Barber* v. *Company*, 80 N. H. 507, 513, 514: " 'We entertain no doubt, that an attorney may be ordered to perform a contract made by him in court, in relation to an action, and that the performance of the order may be enforced by an attachment. . . . ' While it is also said that such proceeding will not be taken except in a clear case and that the court would not be disposed to take it on a mere oral agreement (*Fernald* v. *Ladd*, *supra*; *Vaughan* v. *Morrison*, 55 N. H. 580), yet the existence of the power to act is clearly recognized. The statement as to oral agreements is a mere counsel of caution. The case should be clearly made out. . . . The law is not so impotent that oral deceit can be practiced with impunity, nor is such wrong of a preferred class so that the aggrieved party must be put to his independent suit to recover what could be obtained immediately if the deceit had been in writing." It does not appear that the agreement in the instant case was made in open court as in the *Barber* case but this fact alone should not prevent its enforcement if made in good faith and it is otherwise equitable. To enforce such mutual promises of traders in the market place and attorneys in open court and not to enforce them when made by attorneys in their office is neither logical nor just. The agreement should receive the same treatment whether made in the courthouse or on the courthouse steps.

The defendants assert that the failure to have the compromise agreement approved by the Superior Court is a ground for demurrer. The answer is found in *Beliveau* v. *Amoskeag Co.*, 68 N. H. 225, 229: "In our opinion, the law in cases like the present one is correctly stated in *Tripp* v. *Gifford, supra,* which recognizes the fact of an extensive practice with regard to the adjustment and settlement of such cases, and in which it is said (155 Mass. 109): 'Sometimes, but very rarely, the proposed arrangement is brought to the attention of the court, and its sanction obtained. In most instances, however, the settlement is made and the judgment entered without calling the attention of the presiding justice to it, or obtaining his approval.' " Situations in which prior approval of settlements by the court is mandatory are the exception rather than the rule and governed by special legislation. R. L., c. 341, s. 2; *Merchants Mutual &c. Co.* v. *Kiley,* 92 N. H. 323.

It is the further contention of the defendants that the compromise agreement cannot be enforced without the prior approval of the Probate Court. This involves an interpretation of R. L., c. 355, s. 27: "The probate Court may authorize administrators and guardians to adjust by compromise or arbitration any controversy between them and persons making claims against the estates in their hands." The legislative history of this statute indicates that it is elective and permissive rather than mandatory. As stated in the title of Laws 1872, c. 7 it was "An Act Extending the Power of Executors . . . to Settle Controversies by Arbitration or Compromise." It did not cut off the preexisting power of executors and other fiduciaries to compromise without prior probate approval subject to the chance of surcharge. 2 Woerner, American Law of Administration (3d *ed.*) s. 326. So long as the settlement was reasonable and beneficial to the estate it was as valid without court approval as with it. *Simes* v. *Ward,* 78 N. H. 533. The statute provides a means of protecting the executor from liability but it is not a prerequisite to its enforcement.

Unless the statute of probate approval is mandatory, the weight of authority holds a reasonable compromise valid and enforceable. 85 A. L. R. 199; *Simes* v. *Ward, supra.* In so far as the *dictum* and alternative holding in *Phinney* v. *Bank,* 91 N. H. 184, 190, is *contra* it is not followed.

Since the record in this case does not contain any evidence or findings and consists only of the pleadings, no premature opinion is expressed as to whether or to what extent the defendants are subject to individual liability. Such a determination necessarily depends on

the evidence when and if produced. *Carter* v. *Provo*, 87 N. H. 369; *Jones Brewing Co.* v. *Flaherty*, 80 N. H. 571; *Brown* v. *Churchill*, 89 N. H. 441; Restatement, Trusts, ss. 201, 267.

There is able support for the proposition that equity will enforce executory agreements to compromise claims against an estate. 6 Williston, Contracts (Rev. *ed.*), s. 1845; Restatement, Contracts, s. 417. Whether the compromise agreement in the instant case will be enforced in equity will be determined by equitable principles in the Superior Court. So far as this case stands on the pleadings, the defendants have refused to carry out an agreement entered into by their attorneys and the attorneys for the plaintiff. Equity can compel specific performance thereof on equitable grounds if the agreement is found to be reasonable and of benefit to the estate.

"The foregoing views are considered to meet the reasonable needs of standard and ethical practices of men in their business dealings with each other. . . . It is not practical that the law should adopt all precepts of moral conduct, but it is desirable that its rules and principles should not run counter to them in the important conduct and transactions of life." *Watkins* v. *Carrig*, 91 N. H. 459, 465.

*Demurrer overruled.*

All concurred.