Carroll
No. 86-296

KIRK HALSTEAD

v.

STEWART MURRAY AND TOWN OF MOULTONBOROUGH

July 8, 1988

*Murphy, McLaughlin & Hemeon P.A.*, of Laconia (*Matthew J. Lahey* on the brief and orally), for the plaintiff.

*Schroeder & McLetchie*, of Ossipee (*Robert H. Schroeder* on the brief and orally), for the defendant Stewart Murray.

*Carroll R. Hunter P.A.*, of Meredith (*Michael H. Garner* on the brief and orally), for the defendant Town of Moultonborough.

JOHNSON, J. The plaintiff, Kirk Halstead, appeals from the denial of his motion to enforce settlement of an agreement entered into between his attorney and the attorney representing the defendant Stewart Murray. The Superior Court (*Wyman*, J.) approved the report of the Master (*Charles T. Gallagher*, Esq.) recommending that the agreement be found unenforceable because it failed to comply with the New Hampshire Statute of Frauds. We reverse and remand.

The parties own abutting property on Lake Winnipesaukee in Moultonborough. In April, 1984, the plaintiff filed petitions for declaratory and injunctive relief in the superior court seeking to enjoin Murray from constructing a building which Halstead alleged was in violation of the Moultonborough setback ordinance. The Town of Moultonborough was joined as a defendant. After the litigation had commenced, the individual parties engaged in settlement negotiations through their respective counsel.

On November 5, 1985, defendant's counsel, Robert Schroeder, wrote a letter to the plaintiff's attorney, Philip T. McLaughlin, stating:

> "I have spoken with my client concerning the matters set forth in your letter of October 29 last.
>
> Mr. Murray will accept $115,000.00 for the purchase of his lot. This offer will remain open until January 1, 1986 and thereafter will not be renewed at this figure. The figure is not open to negotiation and is on a 'take it or leave it' basis."

Following this letter, defendant's counsel wrote another letter to plaintiff's counsel on December 10, 1985, stating:

> "Mr. Murray stands firm as to his offer of $115,000.00. The worst that can happen to my client is that he will be forced to remove part of the foundation although this is by no means certain. He also intends to build regardless of the outcome of the litigation. I should also point out that my

client's offer expires at the end of the year and he is firm about this.

Perhaps Mr. Halstead should 'bite the bullet' and purchase the land at my client's asking price."

Each of these letters indicated on its face that a copy was sent to Murray. Shortly after receipt of the second letter, on December 19, 1985, the attorney for the plaintiff, Halstead, wrote a letter to counsel for Murray which stated:

"Mr. Murray's $115,000 offer is accepted.

I suggest you give me a Purchase & Sale Agreement signed by Mr. Murray, $115,000; closing on or before February 1, 1986; subject to title search; usual provisions; no financing contingencies.

On receipt I will Federal Express the Purchase & Sale Agreement to Mr. Halstead in New Jersey for his signature."

It is not contested that, upon Murray's direction, Murray's counsel prepared and forwarded to Halstead's attorney a purchase and sale agreement that called for the sale of the Murray property to Halstead and stated that "[t]he purchase price is $115,000." The contract was then forwarded to Halstead by his counsel, and Halstead executed the agreement as presented. Murray, however, had not signed the purchase and sale contract prior to its being forwarded to Halstead's counsel.

On February 3, 1986, Murray's counsel notified Halstead's counsel that Murray had decided not to go forward with the agreed sale. Shortly thereafter, Murray's counsel informed Halstead's counsel that Murray would consummate the sale if Halstead would pay the sum of $130,000 for the real estate. On February 13, 1986, Halstead filed a motion to enforce settlement with the superior court setting forth facts which were undisputed. Murray's counsel filed an objection, contending that the Statute of Frauds (RSA 506:1) had not been satisfied by the writings set forth above. However, Murray in his objection, offered to reimburse Halstead for "costs of title examination and other costs in reliance upon a proposed settlement." After a brief hearing before the master, in which the above correspondence and a copy of the purchase and sale agreement were entered into evidence, the master concluded that there had not been compliance with the statute and that he "must reluctantly recommend" that Halstead's motion be denied. This appeal followed.

We must decide, on appeal, whether our Statute of Frauds renders the settlement agreement between Murray and Halstead unenforceable. The New Hampshire version of the Statute of Frauds relating to the sale of land is contained in RSA 506:1. The statute reads as follows:

> *Sale of Land.* No action shall be maintained upon a contract for the sale of land unless the agreement upon which it is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person authorized by him in writing."

The issue before us is whether, under the facts of this case, RSA 506:1 prevents Halstead from enforcing the written agreement that was entered into between his counsel and Murray's counsel in order to bring the pending litigation to an end.

■ We begin our analysis by determining whether there was an enforceable contract for the sale of land but for RSA 506:1. This court has indicated that an exchange of correspondence, such as that which occurred in this case, may create a binding contract for the sale of land where the necessary elements for such a contract have been set forth. *Estate of Younge v. Huysmans*, 127 N. H. 461, 465–66, 506 A.2d 282, 284–85 (1965). Moreover, as the following colloquy from the transcript of the master's hearing reveals, counsel for Murray did not dispute the fact that the contract would be binding provided the requirements of the Statute of Frauds had been met.

> "THE COURT: The only defense is the statute of frauds[?]
>
> MR. SCHROEDER: Yes, Your Honor, but it's a weak defense.
>
> THE COURT: Well, it must be considered."

It is thus undisputed that the settlement agreement was a contract for the sale of land. The New Hampshire statute, on its face, would therefore require that Murray either have signed an agreement for the sale of the land in question or given written authorization to his attorney to contract in writing for the sale of the land. As Murray did neither of these, we must consider whether this case should fall within an exception to the Statute of Frauds.

The original Statute of Frauds has an interesting history which is worthy of a brief review. The English Parliament first enacted the statute in 1677 to prevent "'many fraudulent practices, which are commonly endeavored to be upheld by perjury and subornation of perjury.'" Note, *The Doctrine of Equitable Estoppel and the*

*Statute of Frauds,* 66 MICH. L. REV. 170 (1967). At that time, under English trial practice, parties to a lawsuit were deemed to be incompetent witnesses and hence barred from testifying. The statute thus was aimed at making virtually all contracts of significance unenforceable unless they had been reduced to writing. The statute, of course, sometimes produced harsh results, and the English courts soon developed exceptions, such as the rule that partial performance of the contract took the agreement out of the requirements of the statute. Since that time, all of the States of this country have adopted some portion of the original Statute of Frauds. *Id.* at 170–71. However, they have done so with full knowledge that the Statute of Frauds has been judicially interpreted in such a way as to attempt to prevent fraud rather than to promote it.

■■   We have said that RSA 506:1 "is intended to promote certainty and to protect from frauds and perjuries in land transactions." *Weale v. Massachusetts Gen. Housing Corp.,* 117 N.H. 428, 431, 374 A.2d 925, 928 (1977). Further, we have said that "a strict enforcement of the statute can produce frustration on the one hand, and unethical conduct on the other. Hence the law seeks to alleviate the harshness of the statute when some operating facts, such as fraud, part performance or other equitable considerations, are present." *Id.* (citations omitted).

The authority of Murray's counsel to enter into settlement negotiations is not in dispute. Counsel for Murray, at the motion hearing, said, "It's a very difficult matter. In fact, I feel myself there was fully a settlement reached. There's no question as to my authority to make the offer." Further, Murray's counsel also had "no quarrel" with the statement of Halstead's counsel that the original settlement amount was $115,000, and that "Mr. Murray would adhere to the settlement now if the number were 130,000." Hence in this case the effect of the Statute of Frauds would apparently be to allow a party to escape the consequences of a bargain fairly made, not to protect him from the loss of property through fraud of another. There is thus reason to consider whether an exception to the Statute of Frauds is warranted.

■■   There can be no question that the law favors the settlement of a dispute. *McIsaac v. McMurray,* 77 N.H. 466, 471, 93 A. 115, 118 (1915). We have upheld an oral out-of-court settlement between counsel in an eminent domain case pending before the eminent domain commission, where the dollar amount settlement was made one day prior to the beginning of the

proceeding. *Manchester Housing Authority v. Zyla*, 118 N.H. 268, 268–69, 385 A.2d 225, 226–27 (1978). We stated that "[i]t is firmly established that action taken in the conduct and disposition of civil litigation by an attorney within the scope of his authority is binding on his client." *Id.* at 269, 385 A.2d at 226.

We have also said that "[o]ur rule regarding the power of an attorney to bind his client by settlement is, perhaps, the most liberal in the country." *Ducey v. Corey*, 116 N.H. 163, 164, 355 A.2d 426, 427 (1976). The reason for this liberal rule is clear. "The authority of attorneys to make [settlement] agreements is in practice never questioned. It is essential to the orderly and convenient dispatch of business, and necessary for the protection of the rights of the parties." *Beliveau v. Amoskeag Co.*, 68 N.H. 225, 226, 40 A. 734, 734 (1894).

In *Perley v. Bailey*, 89 N.H. 359, 199 A. 570 (1938), this court affirmed its dedication to upholding settlement agreements between counsel. In that case we enforced an oral agreement between counsel for the conveyance of land that was made before a master and was incorporated into his report. We found that this oral settlement agreement was not intended to be covered by the Statute of Frauds because the agreement of the parties was made under the "supervision . . . of the court's representative." *Id.* at 360, 199 A. at 571. We thus enforced the oral agreement for the conveyance of land to settle a dispute.

Finally, in *Burtman v. Butman*, 94 N.H. 412, 54 A.2d 367 (1947), a case involving the settlement between counsel of a dispute in probate court involving transfer of personalty, we put to rest the argument that an agreement made in open court between counsel had a higher status than an agreement made between counsel outside of court. "To enforce . . . mutual promises of . . . attorneys in an open court and not to enforce them when made by attorneys in their office is neither logical nor just. The agreement should receive the same treatment whether made in the courthouse or on the courthouse steps." *Id.* at 415, 54 A.2d at 370.

█ The liberal rule of New Hampshire in enforcing agreements of counsel is grounded upon our recognition of the special relationship that exists between counsel and their clients. *See Ducey v. Corey*, 116 N.H. 163, 355 A.2d 426; *Beliveau v. Amoskeag Co.*, 68 N.H. 225, 40 A. 734. Justice Oliver Wendell Holmes, then a member of the Massachusetts Supreme Judicial Court, spoke of this relationship as one "of the unity of person between attorney and client" in a case involving an oral settlement made by counsel in

open court. *Savage v. Blanchard,* 148 Mass. 348, 350, 19 N.E. 396, 397 (1888).

█ We hold that because there is such a special relationship between the attorney and his client, our Statute of Frauds does not require the client to authorize his attorney, in writing, to settle an action involving a land dispute through sale of the subject property. The last clause of RSA 506:1, relating to an agent, was not intended to cover an attorney under such circumstances. A written settlement contract signed by a client's attorney with full authorization, and agreeing to convey the land which is the subject of the action in which the attorney represents the client, satisfies our Statute of Frauds and is binding on the client.

A client should not be allowed, on the one hand, to assert a special relationship with his lawyer, such that his confidential communications cannot be revealed, and, on the other hand, to assert that his lawyer is nothing more than an agent of the same status as a real estate broker. A client receives great privileges when dealing with his lawyer, and he must assume burdens commensurate with such privileges.

██ In deciding this case we emphasize that we limit our decision to those cases in which the client has authorized the attorney to settle a pending case involving land by the sale of the land which is the subject of the suit. If the client is able to prove, in subsequent litigation, that he did not authorize the attorney to settle the dispute or that he was not adequately informed of the terms of settlement, then the client may have recourse to suit against the attorney for breach of his fiduciary duty zealously to protect the interest of his client. Of course, a lawyer in any case must have authorization from his client in order to settle a dispute for money damages or for any other consideration. Here, the record would indicate that all necessary conditions have been met. We, of course, make no factual finding as to whether the client indeed authorized his lawyer to settle the case, nor do we make factual findings as to whether copies of the letters between counsel, which constitute the contract for the sale of land in settlement of the pending case, were in fact sent to the client as the facial record would indicate.

*Reversed and remanded.*

THAYER, J., with whom SOUTER, J., joined, dissented; the others concurred.

THAYER, J., dissenting: Because I disagree with the majority's analysis in this case, I respectfully dissent. Two arguments underlie this appeal. Plaintiff first argues that although the settlement involved a conveyance of land, the very nature of the negotiations, as settlement proceedings, takes the conveyance out of the Statute of Frauds. I disagree.

This court has previously held that settlements of pending litigation which involve land conveyances may be excepted from the Statute of Frauds where those settlements are made under the direct supervision of the court. *Perley v. Bailey*, 89 N.H. 359, 360, 199 A. 570, 571 (1938). "The entry of a decree or judgment upon a parol stipulation made by the parties or their counsel in open court has long been usually a matter of course." And "such a stipulation as we have here, made under the supervision of the court or of the court's representative, derives effect from the control of the court rather than the stipulation itself." *Id.* In the present case, however, the court has exercised no control over the settlement negotiations. The agreement was not made in court and, although the agreement was meant to result in a settlement of pending litigation, there are no court-approved stipulations, nor is there a court order incorporating the provisions of the settlement agreement.

Plaintiff next argues that defendant seeks to use RSA 506:1 as a technical defense, for the sole purpose, in effect, of making possible his own unconscionable demand for an additional fifteen thousand dollars from the plaintiff. Plaintiff further argues that the Statute of Frauds may not be used to perpetrate fraud.

While I agree with the plaintiff that the Statute of Frauds may not be used to perpetrate a fraud, and that defendant Murray's actions in increasing the settlement amount or refusing to sign the purchase and sale agreement are suggestive of bad faith, we do not, upon the record before us, have facts sufficient to establish fraudulent behavior on the part of Murray. This court has previously held that mere refusal to sign a purchase and sale agreement does not, by itself, constitute fraud. *Weale v. Massachusetts Gen. Housing Corp.*, 117 N.H. 428, 431, 374 A.2d 925, 928 (1977); *Clark v. Lovelace*, 102 N.H. 97, 99, 151 A.2d 224, 225 (1959).

RSA 506:1 provides that "[n]o action shall be maintained upon a contract for the sale of land unless the agreement upon which it is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person authorized by him in writing." This court has consistently recognized the necessity for strict compliance with RSA 506:1 in transactions for

the sale of land. The statute requires written authority for an agent to sign an agreement to convey real property. *Ashuelot Paper Co. v. Ryll,* 109 N.H. 573, 574–75, 259 A.2d 657, 659 (1969); *Rafferty v. Lougee,* 63 N.H. 54 (1884).

However, we also have recognized that exceptions to the rigid application of RSA 506:1 exist where, by requiring strict compliance, we would frustrate the very purpose of the statute. *Weale, supra* at 431–32, 374 A.2d at 928; *Clark supra; White v. Poole,* 74 N.H. 71, 65 A. 255 (1906); *see also Karns v. Olney,* 80 Cal. 90, 22 P. 57 (1889); 37 C.J.S. *Statute of Frauds* § 247. In *White,* this court held that an oral agreement to convey real estate was definite enough to sustain a decree for specific performance, where the plaintiff had partially performed on the contract in reliance upon defendant's oral promise. *White, supra* at 73, 65 A. at 257. Partial performance or injurious reliance constitute equitable considerations upon which the requirements of the Statute of Frauds may be waived in some cases. J. CALAMARI & J. PERILLO, CONTRACTS, EQUITABLE ESTOPPEL § 19-47 (3d ed. 1987).

The present case is distinguishable from *White* in that the plaintiff has not partially performed to his own detriment. Indeed, the plaintiff has not withdrawn his lawsuit and thus may return to court to seek a determination of his original claims. Since neither fraud nor partial performance exists under the facts of this case, we should not set aside the requirements of the Statute of Frauds.

Although defendant's counsel has admitted at the trial court hearing, as well as in his pleadings and in his oral argument, that he had actual authority to settle for his client, no written authorization exists. Absent such a writing or equitable considerations which would take the place of such a writing, we should adhere to the weight of authority before us. To hold otherwise amounts to a virtual repeal of the statute itself. *See Weale,* 117 N.H. at 433, 373 A.2d at 929.

Unable to base their opinion on the traditional exceptions to the writing requirement of the statute, the majority have embraced a new theory for an exception based on the relationships that exist between the attorney, his client and the court. They begin their analysis by setting forth cases which hold that an attorney and his client have a special relationship, which permits the attorney to bind his client when acting within the scope of his employment. While this general statement of the law is correct, the cases are of little consequence on the issue before us, since none of the cited cases involves a statutorily mandated condition that must exist before the attorney may bind his client. *See Burtman v. Butman,*

94 N.H. 412, 54 A.2d 367 (1947). RSA 506:1 clearly requires the person signing the agreement to be authorized to do so in writing by the party to be charged.

The majority cites one case in support of their holding that an oral agreement for the conveyance of land may be enforced, *Perley v. Bailey*, 89 N.H. 359, 199 A. 570. However, as stated earlier, the enforcement of the agreement in *Perley* was based on the fact that the oral stipulation was reached in court and incorporated in the master's report. As part of a court order, the agreement was outside the Statute of Frauds. In the present case, the agreement was not made in court, nor was it incorporated into a court decree.

In their quest to find some justification for their disregard of the plain meaning of RSA 506:1, and the exceptions previously approved by the court, the majority draw upon Justice Oliver Wendell Holmes to establish the proposition that the relationship between lawyers and their clients is one "of the unity of person . . . ." As such, they reason that the statutory requirement of written authorization when representing another in a transaction involving the sale of land is inapplicable when the lawyer is negotiating a settlement of litigation in progress. The majority view of such "unity" is that the lawyer is not representing the client. As the majority opinion states it, the lawyer is not an agent for his client because the lawyer is one with the client and has a unique relationship to the court. The inconsistency presented by this unity theory is that a lawyer, because of his relationship to the court, can bind the client without conforming to the Statute of Frauds, while the client, if he appeared *pro se*, would not be bound to an agreement unless he conformed with the statute.

Aware that this new exception to the statute has the potential of forcing clients to convey property based on agreements reached by their lawyers, my brothers comprising the majority state that clients may have recourse by suing their lawyers. This, I point out to them, is the same type of litigation that is eliminated when the party authorizing another to act for him does so in writing. The majority opinion will result in attorneys having to require written authorization from their clients in matters involving the sale of land, if for no other reason than self-protection.

SOUTER, J., joins in the dissent.