Hillsborough
No. 89-300

### Barbara Bock (Lundstrom)

v.

### Jerry Lundstrom

May 4, 1990

*Cynthia E. Noyes*, of Manchester, by brief and orally, for the plaintiff.

*Krolikowski & Hobbs*, of Nashua (*Joseph C. Krolikowski* on the brief and orally), for the defendant.

BROCK, C.J.   The defendant, Jerry Lundstrom, appeals from an order recommended by a Master (*Peter J. Bourque*, Esq.) and approved by the Superior Court (*Pappagianis*, J.) enforcing an out-of-court settlement agreement reached by counsel for the plaintiff and counsel for the defendant. Arguing that his attorney was not authorized to settle his claims or make an agreement on his behalf, the defendant contends that the trial court erred in enforcing an oral agreement for the sale of the parties' marital home. We find no error, and therefore affirm.

The parties were divorced on December 1, 1986, by a decree which awarded the plaintiff, Barbara Bock (formerly Lundstrom), a one-half interest in the parties' marital home, located at 33 Blueberry Circle in Pelham. The decree provided that "the plaintiff's name shall be forthwith placed as tenant in common on the deed," and that she and the parties' minor child would be entitled to exclusive occupancy of the premises until one of the following occurred: (1) the child graduated from high school; (2) the child no longer resided at Blueberry Circle; or (3) the plaintiff resided with an unrelated male or female. The decree provided that upon the occurrence of any of the above contingencies, the property would be sold immediately, and the proceeds equally divided, or that alternatively, the plaintiff could elect to purchase the defendant's share. The decree further provided that the defendant was responsible for paying the mortgage, home insurance premiums and real estate taxes until the parties realized their respective interests in the proceeds of a sale.

Alleging that an unrelated female was residing with the plaintiff at the Blueberry Circle home, and that the plaintiff's right to occupy the premises had therefore expired, the defendant filed a petition to enforce the divorce decree on July 7, 1988, demanding that the court order the immediate sale of the property. Although the plaintiff responded by filing an objection, the parties, through counsel, appeared in court and agreed to put the real estate on the market. To that end, the plaintiff and the defendant jointly signed a listing agreement with a real estate broker.

Subsequently, however, the defendant rekindled the instant litigation by filing a motion for contempt. Claiming that the plaintiff was not cooperating with the broker, and that the minor child was boarding at Lawrence Academy in Groton, Massachusetts, the defendant sought a court order requiring the plaintiff to "vacate the premises

to facilitate the sale." Prior to the hearing on the defendant's motion, which was scheduled for May 4, 1989, counsel for the parties began negotiating a settlement, eventually reaching an agreement designed to avoid future litigation between the parties and to resolve the dispute over the Blueberry Circle home.

Concerned that "day by day" the house was worth "less and less" due to a lack of care, cleaning, and maintenance, and that the situation was becoming critical with respect to overdue mortgage payments and unpaid tax bills, counsel for the defendant contacted counsel for the plaintiff by letter dated February 1, 1989, and proposed an arrangement whereby either of the parties could buy out the other's interest in the property. Specifically, the letter suggested that either party could sell his or her interest for $50,000, and then walk away forever, leaving the other with all of the unpaid bills and "any other obligation regarding the house." Although the defendant contends that he authorized his attorney only to buy out the plaintiff's share, and that he never intended to sell his own share, he admitted at trial that he received a copy of the February 1st letter and never made any comment to his attorney expressing dissatisfaction with its terms.

During the month of March, 1989, counsel for the plaintiff and for the defendant exchanged correspondence containing various counter-offers and proposals, until they jointly determined by telephone to revive the terms of the original offer, reaching an oral agreement whereby the plaintiff would purchase the defendant's interest for $50,000. According to the defendant's own testimony, he was present in his attorney's office when a secretary prepared a deed for the closing. However, on April 7, 1989, the date set for closing, the defendant repudiated the agreement, contending through newly hired counsel that he had never authorized the negotiation and that the deal was off.

Consequently, the plaintiff filed a motion to enforce the agreement, and a hearing was held before a master on May 4, 1989. Finding that counsel for the defendant had been fully authorized to enter into a settlement on his behalf, the master ruled that the settlement agreement was binding upon the defendant, and that the defendant should be ordered to convey the disputed property to the plaintiff for the amount of $50,000. The master's recommendation was approved by the court on May 8, 1989, and this appeal followed.

■■ As a matter of longstanding law in New Hampshire, "action taken in the conduct and disposition of civil litigation by an at-

torney within the scope of his authority is binding on his client." *Manchester Housing Auth. v. Zyla*, 118 N.H. 268, 269, 385 A.2d 225, 226 (1978). Our rule regarding the power of an attorney to make a settlement agreement is intended to protect the rights of the parties and to promote the orderly and convenient dispatch of business. *Bossi v. Bossi*, 131 N.H. 262, 264, 551 A.2d 978, 980 (1988). This court has recognized since the earliest of times that exigencies may exist making in-court settlement impossible or impractical, and that the authority of an attorney to compromise a client's claims and dispose of an action by final and binding agreement should not be dependent upon the sanction of a court. *Beliveau v. Amoskeag Co.*, 68 N.H. 225, 226–29, 40 A. 734, 734–36 (1894). Accordingly, we have long upheld the enforceability of authorized settlement agreements reached by counsel, whether made by attorneys in their offices, in the courthouse, or on the courthouse steps. *Burtman v. Butman*, 94 N.H. 412, 415, 54 A.2d 367, 370 (1947).

If a settlement agreement has in fact been reached by counsel, the critical inquiry in determining its enforceability is whether the lawyer was authorized by the client to make the agreement. *Halstead v. Murray*, 130 N.H. 560, 566, 547 A.2d 202, 205 (1988). In the case before us, the master concluded that the defendant was aware of the value of his interest in the disputed real estate, and knowingly authorized his attorney to sell the same.

■ Challenging the factual findings made by the master, the defendant argues that "there is a lack of evidence demonstrating that the defendant authorized or accepted the agreement." Although the defendant concedes that the standard of review on appeal from a master's recommendation is whether the master abused his discretion, the defendant urges us to adopt the stringent standard of proof by "clear and convincing evidence" where the factual determination at issue is an attorney's authority to settle a case. We decline to do so.

■ The factual determination of authorization in the present case depends upon the credibility of witnesses and the weight given to their testimony, as well as the reasonable inferences drawn from all the evidence produced at trial, and we see no reason to hold otherwise than that the master's findings are binding upon this court unless the record discloses insufficient evidence to support them. *Hynes v. Whitehouse*, 120 N.H. 417, 421, 415 A.2d 876, 878 (1980). Thus, the standard of review on appeal from a master's recommendation is not "'whether on the reported evidence, the members of

this court would find as the master has found, but whether any reasonable man could so find.'" *Brown v. Mary Hitchcock Memorial Hosp.*, 117 N.H. 739, 744, 378 A.2d 1138, 1141 (1977) (citation omitted). We note that the record in this case is replete with evidence to support the master's findings of fact, and that the only conflicting evidence of record is the defendant's own potentially self-serving testimony.

■■ The master, who is the trier of fact, has the benefit of observing the parties and their witnesses, and may credit or discredit the conflicting testimony of witnesses before him. *Ballou v. Ballou*, 118 N.H. 463, 465–66, 387 A.2d 1169, 1170 (1978). "When findings depend upon debatable inferences deducible from the evidentiary facts, we cannot hold as a matter of law that there was error." *Id.* at 466, 387 A.2d at 1170. We therefore uphold the findings of the master.

■ Finally, we briefly address the defendant's argument that the Statute of Frauds, RSA 506:1, prohibits an attorney from contracting for the sale of a client's real estate in the absence of written authorization from the client. We have recently held that "because there is such a special relationship between the attorney and his client, our Statute of Frauds does not require the client to authorize his attorney, in writing, to settle an action involving a land dispute through sale of the subject property." *Halstead v. Murray*, 130 N.H. at 566, 547 A.2d at 205. The Statute of Frauds is therefore inapplicable, and does not render the settlement agreement unenforceable.

*Affirmed.*

All concurred.