Rockingham
No. 95-645

THE BYBLOS CORPORATION

v.

SALEM FARM REALTY TRUST & a.

April 11, 1997

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* on the brief and orally), for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Robert E. Murphy, Jr.* and *Jennifer L. Murphy* on the brief, and *Mr. Murphy* orally), for defendant Salem Farms Realty Trust.

*Alexander's Markets* filed no brief.

BRODERICK, J. Defendant Salem Farm Realty Trust (Salem Farm) appeals the Superior Court's (*Coffey*, J.) ruling enforcing an oral settlement agreement involving the transfer of a leasehold interest. We conclude that the settlement is subject to the statute of frauds, RSA 506:1 (1983), and accordingly reverse and remand.

## I

Salem Farm leases a small building on a tract of land owned by a third party. The plaintiff, the Byblos Corporation, is Salem Farm's sublessee and runs a take-out food business on the premises. The owner of the land and building operates a large retail electronics store on the site. Prior to 1992, the building from which the plaintiff conducts its business was located inside a large supermarket operated by defendant Alexander's Markets. When the electronics store was built, the supermarket was demolished, and the plaintiff's store became a free-standing structure. The demolition and construction work on the site allegedly interfered with the plaintiff's business operations, and the absence of the supermarket deprived

the business of foot traffic. These circumstances resulted in a legal battle, in which the parties filed reciprocal claims in the superior court.

On April 14, 1994, a motion hearing was held in superior court concerning storage fees charged to the plaintiff by Salem Farm. The court, after briefly hearing from both sides, urged the parties to consider some type of settlement. The parties and counsel adjourned to a conference room where they remained for the balance of the day. They discussed the pending motion but soon expanded their focus to settlement of all outstanding litigation. At day's end each participant prepared a memorandum detailing the posture of the negotiations. The five memoranda indicated that the participants had discussed a settlement agreement whereby Salem Farm would transfer its leasehold interest to the plaintiff in exchange for $500,000.

Some time later it became clear to the plaintiff that Salem Farm was balking at fulfilling the terms of the settlement, and the plaintiff filed a motion to compel enforcement. After two days of hearings, the trial court found for the plaintiff and ordered that the agreement be fully implemented. The court determined that there had been an offer of compromise and an acceptance. It pointed to the marked similarity between the parties' memoranda, the detailed content of the writings, and the considerable time spent in negotiation as confirmation of the parties' intent to be bound. Having found a meeting of the minds, the court ruled that the statute of frauds did not apply to the parties' agreement, which included the transfer of an interest in land, because "[t]he statute . . . will not invalidate an agreement to settle a civil action." Accordingly, the court did not determine whether a writing existed that would satisfy the statute of frauds. This appeal followed.

Salem Farm argues that the trial court erred in several respects when it determined that the parties had entered into a binding settlement agreement. Salem Farm also asserts that the plaintiff's conduct during the months following the negotiations estops it from arguing that a valid agreement exists. Salem Farm further argues that, assuming an agreement did exist, the terms of that agreement limit the plaintiff to reinstatement of the underlying litigation upon breach. Finally, Salem Farm contends that the trial court erred when it determined that the statute of frauds did not apply to the current case. We address each argument in turn.

## II

The trial court's determination that a binding settlement agreement existed, and its construction of the disputed terms of

that agreement, are questions of fact. *See Belknap Textiles, Inc. v. Belknap Industries, Inc.*, 121 N.H. 28, 30, 424 A.2d 1141, 1143 (1981); *Harrison v. Watson*, 116 N.H. 510, 511, 363 A.2d 204, 205 (1976). Similarly, "[t]he burden of proving estoppel is upon the party asserting it, and its existence is a question of fact to be resolved by the trier of fact." *Olszak v. Peerless Ins. Co.*, 119 N.H. 686, 690, 406 A.2d 711, 714 (1979). Absent an error of law, this court will affirm the trial court's rulings on these issues if they are supported by the evidence. *See, e.g., Guaraldi v. Trans-Lease Group*, 136 N.H. 457, 461, 617 A.2d 648, 650 (1992) (existence of agreement); *Olszak*, 119 N.H. at 691, 406 A.2d at 714 (estoppel).

■ ■ The trial court's reasons for finding that a binding settlement agreement existed are supported by ample evidence in the record. Its determination that the agreement provided for reinstatement of the underlying litigation only if Salem Farm was *unable* to close because of problems with title or hazardous waste is also supported by the evidence. Accordingly, its decision to enforce the terms of the sale following Salem Farm's voluntary breach must be affirmed. *Cf. Hawthorne Trust v. Maine Savings Bank*, 136 N.H. 533, 539, 618 A.2d 828, 832 (1992). Similarly, the trial court could appropriately find that Salem Farm had not met its burden of establishing the basic elements of estoppel, *cf. Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. 438, 442-43, 388 A.2d 940, 942-43 (1978), as the court had already determined that the plaintiff had acted reasonably during the time period in question, suggesting that the plaintiff did not intend to mislead or induce reliance by Salem Farm. *Id.* at 442, 388 A.2d at 942. We therefore proceed to a consideration of Salem Farm's remaining argument.

### III

■ ■ Whether the trial court correctly concluded that the statute of frauds did not apply to this settlement agreement is a question of law that we review *de novo*. *See Tsiatsios v. Tsiatsios*, 140 N.H. 173, 176, 663 A.2d 1335, 1338 (1995). The statute of frauds provides that "[n]o action shall be maintained upon a contract for the sale of land unless the agreement upon which it is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person authorized by him in writing." RSA 506:1. "A parol agreement to lease land for a term of years is a contract to convey an interest in land[] within the Statute of Frauds." *Smith v. Phillips*, 69 N.H. 470, 471, 43 A. 183, 183 (1898). Consequently, an agreement to transfer a leasehold interest must also be in writing to be enforceable. *See Wilson v. DelPapa*, 634 A.2d 1252, 1254 n.3 (Me. 1993).

The plaintiff argues, however, that our decisions in *Bock (Lundstrom) v. Lundstrom*, 133 N.H. 161, 573 A.2d 882 (1990), and *Halstead v. Murray*, 130 N.H. 560, 547 A.2d 202 (1988), stand for the proposition that settlement agreements negotiated by counsel need not comply with the statute of frauds. Such a broad reading of these decisions overlooks the essential factual difference between those cases and the present one: while the prior cases involved the "authority" clause of the statute, the present case implicates the very heart of the statute.

In both *Halstead* and *Bock*, the court stated that "because there is such a special relationship between the attorney and his client, our Statute of Frauds does not require the client to authorize his attorney, in writing, to settle an action involving a land dispute through sale of the subject property." *Halstead*, 130 N.H. at 566, 547 A.2d at 205; *Bock*, 133 N.H. at 165, 573 A.2d at 885 (quotation omitted); *cf. Beliveau v. Amoskeag Co.*, 68 N.H. 225, 226, 40 A. 734, 734 (1894). By not requiring an attorney's authority to be evidenced by a writing that complies with the statute of frauds, this court recognized the special role that an attorney plays in a client's affairs: a role that transcends that of mere agent. *See Halstead*, 130 N.H. at 565-66, 547 A.2d at 205.

In the present appeal, however, we must address the need for a writing between adverse parties to a settlement agreement negotiated by counsel when their agreement involves the transfer of an interest in land. The policy reasons for the statute of frauds are never more evident than when opposing litigants come together to thrash out their differences. *See Weale v. Massachusetts Gen. Housing Corp.*, 117 N.H. 428, 431, 374 A.2d 925, 928 (1977) (stating that the statute of frauds "is intended to promote certainty and to protect from frauds and perjuries in land transactions"). Unlike the situation at issue in *Bock* and *Halstead*, in which the attorney and client enjoyed a special status underscored by a complete unity of interest, the current case involves litigants with divergent interests and incentives. In addition, the policy behind the legislature's enactment of the statute, *see Weale*, 117 N.H. at 431, 374 A.2d at 928, must necessarily inform this court's otherwise liberal policy of enforcing settlement agreements. *See Halstead*, 130 N.H. at 565, 547 A.2d at 205. While it is true that attorneys are deemed to be officers of the court, *Welanko's Case*, 99 N.H. 413, 414, 112 A.2d 50, 51 (1955), their involvement in a transaction does not, in and of itself, eclipse the need for certainty in land titles to such an extent that the commands of the legislature can be overlooked. *Cf. O'Brien v. O'Brien*, 141 N.H. 435, 437, 684 A.2d 1352, 1354 (1996) (court will not create exceptions to clearly defined legislative policies).

■ In light of these considerations, we hold that, when a settlement agreement includes the transfer of an interest in land, it necessarily implicates the statute of frauds. Therefore, the agreement must be in writing and signed by the party to be charged, or by some person authorized by him. RSA 506:1. We continue to adhere to the view that settlements that involve land conveyances are excepted from the statute when they are finalized under court supervision. *See Perley v. Bailey*, 89 N.H. 359, 360, 199 A. 570, 571 (1938); *cf. Fernald v. Ladd*, 4 N.H. 370, 370 (1828). Likewise, when certain factors, "such as fraud, part performance or other equitable considerations, are present," the trial court may dispense with the need for a written agreement. *Weale*, 117 N.H. at 431, 374 A.2d at 928. Settlements that do not implicate the statute of frauds may also remain unwritten. *Cf. Manchester Housing Auth. v. Zyla*, 118 N.H. 268, 268-69, 385 A.2d 225, 226-27 (1978); *Burtman v. Burtman*, 94 N.H. 412, 415, 54 A.2d 367, 370 (1947). Finally, as we held in *Halstead*, an attorney's authority to settle litigation for a client need not be in writing, even if the underlying settlement implicates the statute of frauds. *Halstead*, 130 N.H. at 566, 547 A.2d at 205. When, however, two opposing parties agree to a conveyance of an interest in land, with or without lawyer involvement, the fact that the conveyance is part of a settlement does not remove the transaction from the confines of the statute. *See Omaha Nat. Bank of Omaha v. Mullenax*, 320 N.W.2d 755, 758 (Neb. 1982). The trial court's determination that the statute of frauds is inapplicable to the present case is, therefore, reversed. As the trial court never determined if a writing existed that would satisfy the statute of frauds, the matter is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

All concurred.